MICHAEL GUGLIELMO *v.* KLAUSNER SUPPLY COMPANY, INC.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued May 13—decided June 17, 1969

*D. Michael Hurley,* with whom, on the brief, were *Leon RisCassi* and *William R. Davis,* for the appellant-appellee (plaintiff).

*Thomas J. Groark, Jr.,* with whom was *Daniel W. Moger, Jr.,* for the appellee-appellant (defendant).

HOUSE, J. This case arose from circumstances which may be briefly summarized. Seligman and Sons, Inc., plumbing and heating contractors, hereinafter referred to as Seligman, purchased from the defendant wholesaler a large can of a product known as Coatatub, which is used in connection with plumbing and heating installations. Sometime thereafter Seligman hired the plaintiff as a plumber. On May 26, 1964, during Seligman's work in the construction of an apartment house in Wallingford, Robert Treat, another employee of Seligman, was furnished the can of Coatatub and for two or three hours applied the contents to a number of bathtubs on the first floor of the building under construction. While Treat was doing this work on the first floor, the plaintiff was assigned by Seligman to work in the basement connecting the water main to bathtubs and toilets. The plaintiff had neither heard of Coatatub nor seen a can of it before this incident, and he knew nothing about the product. After working for about twenty minutes in a basement room underneath a bathtub and into which room pipes from a first-floor bathroom extended, the plaintiff noticed an odor similar to banana oil but did not attach any significance to the existence of the odor. He continued to work for an additional ten to twenty minutes after becoming aware of the odor. He then left the basement and went up a ladder to obtain additional material. As he did so he began to feel shaky and dizzy, and when he reached the top of the ladder he found that he could not walk and had to crawl out on his hands and knees. He was dizzy and could not see and fell against a tree. A fellow employee put him into an automobile and drove him to the office of a doctor. The doctor concluded that the plaintiff had been rendered unconscious from

inhaling fumes containing some plastic solvents and had sustained a wrenching injury to his shoulder as a result of his fall.

Coatatub is a combination of vinyl chloride, vinyl acetate copolymer and a mixture of two solvents, toluene and methyl ethyl ketone. The solvents can cause a reaction of anesthesia or narcosis. There were two warnings on the can which contained the product. Centered and at the top of the label directly over the large lettering of the word Coatatub there is the warning "avoid prolonged breathing vapors", and on the left side of the label is a caution that the contents of the can are flammable.

The manufacturer of Coatatub was not a party to this action. The plaintiff's complaint is in two counts. The first sounds in negligence. It alleges that the product is defective and inherently dangerous to all persons coming into proximity with it, and by way of specific acts of negligence it alleges (a) that the defendant failed to give any warning of the dangerous propensities of the product and (b) that, although it knew or should have known of the dangerous propensities of the product and the uses which were made of it and that workers would be exposed to it, the defendant failed to take any measures to warn persons of the dangerous propensities or to correct them. The second count is phrased in terms of breach of warranty. It alleges that the defendant by means of advertising, sales talk and other means "impliedly and/or expressly" warranted to Seligman and its employees, including the plaintiff, that the product was safe and fit for its intended use; that, acting in reliance on these representations of the defendant, Seligman purchased the product; that, "[a]cting in reliance thereon [sic], and as a consequence of, the said advertising,

sales talk and other means of the defendant corporation, the plaintiff proceeded to work in and about the area where said 'Coatatub' had been used"; that the product was not as warranted and "said warranties were broken in that the plaintiff was injured when he inhaled said fumes"; and that the unsafe, defective and dangerous condition of the product constituted a breach of warranty to the plaintiff.

By way of special defense the defendant pleaded contributory negligence on the part of the plaintiff in failing to make reasonable and proper use of his senses and faculties at the time of his injury. The plaintiff denied this allegation.

The plaintiff expressly requested the court to charge the jury on the principles of strict tort liability as detailed in § 402 A of volume 2 of the Restatement (Second) of Torts and applicable to one who sells a product in a defective condition when (1) the seller is engaged in the business of selling such a product, (2) it is expected to and does reach the user or consumer without substantial change, and (3) it causes physical harm to the user. The court charged as requested. The court also instructed the jury that the evidence did not support a finding of express warranty and that they should ignore the plaintiff's allegations that there was a breach of an express warranty by the defendant. The plaintiff has not claimed that the latter instruction was erroneous.

The jury returned a general verdict for the plaintiff, assessing damages at $3000. The defendant moved to set aside the verdict and that judgment be rendered for the defendant in accordance with its earlier motion for a directed verdict. See Practice Book § 255. The court granted the motion to set aside the verdict and rendered judgment for the

defendant on the second count of the complaint and ordered a new trial on the first count. The court's memorandum of decision explained the reasons for its action. As to both counts the court noted that it had failed to instruct the jury on the doctrine of intervening cause although the defendant had properly requested such instructions. It was also of the opinion that it had erroneously failed to explain the doctrine enunciated in *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598, relative to absent witnesses. As to the second count, it noted that for the plaintiff to recover he must have alleged and proved that the product Coatatub was expected to and did reach the user or consumer without substantial change in the condition in which it was sold, citing *Rossignol* v. *Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 227 A.2d 418. The complaint contained no such allegation, and the court found that the plaintiff had offered no proof whatever on this essential element for a good cause of action based on strict tort product liability. It also observed that the plaintiff had failed to prove that Coatatub as chemically compounded was dangerous to an appreciable number of people, citing *Corneliuson* v. *Arthur Drug Stores, Inc.*, 153 Conn. 134, 137, 214 A.2d 676. Since the jury rendered a general verdict, the court could not determine, with any certainty, on which count the verdict had been rendered. The court felt that a verdict should be directed for the defendant on the second count, which it did, and that under the circumstances the verdict for the plaintiff on the first count should be set aside, which it did. Of course, separate verdicts should have been taken on each count, but neither party requested that such action be taken.

From this judgment the plaintiff appealed. The

defendant appealed from the denial of its motions for a directed verdict and for judgment notwithstanding the verdict on the first count. See Practice Book §§ 600, 643. It also filed a bill of exceptions claiming errors in the court's charge. Practice Book § 653.

In the view which we take of the appeals, it is unnecessary to consider all of the assignments of error claimed by each of the parties. Of course, those which have not been briefed are considered as abandoned. *Wood* v. *Wilton,* 156 Conn. 304, 305, 240 A.2d 904.

As to both counts the court correctly set aside the verdict since it had failed to instruct the jury on the doctrine of intervening causation despite the defendant's proper request for such instructions. The charge is tested by the claims of proof in the finding. *Allard* v. *Hartford,* 151 Conn. 284, 291, 197 A.2d 69. The defendant offered evidence to prove and claimed to have proved that the negligence of Seligman's foreman in failing to mention the warning on the Coatatub container to Treat, the user of the product, or to the plaintiff, whom he directed to work in the basement beneath the room where the product was being applied, was an intervening or superseding cause of the injuries to the plaintiff. The defendant was entitled to have the jury charged in accordance with its request. *Virelli* v. *Benhattie, Inc.,* 146 Conn. 203, 209, 148 A.2d 760; *Ferino* v. *Palmer,* 133 Conn. 463, 467, 52 A.2d 433; *Corey* v. *Phillips,* 126 Conn. 246, 254, 10 A.2d 370. In the exercise of its inherent power the trial court properly set aside the general verdict because of this harmful omission in the charge. *Trainor* v. *Frank Mercede & Sons, Inc.,* 152 Conn. 364, 366, 367, 207 A.2d 54. Since this ruling was proper for one of the

two reasons given by the court, it is unnecessary to consider whether its interpretation of the rule in *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598, additionally supported the setting aside of the verdict.

As we have noted, the second count was phrased in the language of warranty, pleading that the defendant "impliedly and/or expressly warranted" to Seligman and to the plaintiff that the product was safe and fit for its intended use and that the plaintiff in reliance on the defendant's representations proceeded to work about the area where the product was being used. Construed most favorably to the plaintiff, the count could be interpreted as purporting to allege three distinct causes of action: (a) breach of express warranty, (b) breach of implied warranty, and (c) strict tort product liability. The court found that the plaintiff had not proved any express warranty, and without the plaintiff's taking exception or stating any claim of error, the court removed from the jury's consideration any question of liability based on such a cause of action. In accordance with the plaintiff's specific request, the court charged the jury on the principles of strict liability in tort of the seller of a product which is in a defective or unreasonably dangerous condition as those principles have been set out in § 402 A of volume 2 of the Restatement (Second) of Torts and approved by us in *Rossignol* v. *Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 560, 227 A.2d 418. As volume 2 of the Restatement (Second) of Torts indicates (§ 402 A, comments l and m), in a cause of action based on strict liability in tort it is unnecessary for the plaintiff to prove either his privity of contract with the seller or his reliance on any representation or undertaking of the seller. As,

however, we pointed out in the *Rossignol* case (p. 561), the doctrine is one of strict liability, not absolute liability. For a plaintiff to prevail in such a cause of action it is incumbent upon him to allege and prove the essential elements of the cause of action, and one of these is that the product was expected to and did reach the user or consumer without substantial change in the condition in which it was sold. *Rossignol v. Danbury School of Aeronautics, Inc.,* supra, 562; Restatement (Second), 2 Torts § 402 A and comments g, p, q. As the court observed in its memorandum of decision, the plaintiff neither alleged nor offered any proof whatever on this essential element of a cause of action based on strict tort liability. There was, accordingly, without the necessity of our having to decide whether the court correctly charged that under the circumstances the plaintiff was a user or consumer as those terms are used in the rule as defined in the Restatement, no error in the conclusion of the court that the plaintiff had failed to allege and prove a cause of action based on principles of strict liability arising from the sale of a product.

In light of the plaintiff's specific request to charge on the principles of strict tort product liability, it is surprising to find that on this appeal he now takes the position that "[a] review of the Second Count of the Complaint . . . will disclose that this count was brought, and states a cause of action, for express and/or implied warranty under the common law . . . [and that the] trial court therefore erred in applying a test for strict liability in tort to an action based upon express and/or implied warranty in common law." Where a plaintiff has requested in writing that an issue be submitted to the jury, he cannot on appeal claim error in its submission. *Bat-*

*tistelli* v. *Connohio, Inc.,* 138 Conn. 646, 649, 88 A.2d 372. Action induced by an appellant cannot be made a ground of error. *Housing Authority* v. *Pezenik,* 137 Conn. 442, 448, 78 A.2d 546.

In regard to the claim of implied warranty as set out in the complaint, there is nothing in the record or the appendix to the brief of the plaintiff to support his allegation that he relied on any representations by the defendant that Coatatub was safe and fit for use. See *Hamon* v. *Digliani,* 148 Conn. 710, 716, 718, 174 A.2d 294. In fact, the finding of the court is that the plaintiff offered evidence to prove and claimed to have proved that he had neither seen nor heard of Coatatub before the incident and "knew absolutely nothing about the same."

On the plaintiff's appeal there is no error in the ruling of the court granting the defendant's motion for judgment in its favor on the second count and in setting aside the verdict as to the first count.

There remains for consideration the appeal of the defendant asserting that the court was in error in denying its motion for judgment notwithstanding the verdict as to the first count of the complaint. It is the claim of the defendant that its motion should have been granted because no evidence was introduced which would support a verdict for the plaintiff on this count.

As we have already noted, the first count sounds in negligence, alleges that Coatatub is an inherently dangerous substance and by way of specific allegations of negligence asserts that the defendant failed to give any warning of the dangerous propensities of the product and that the defendant, although it knew or should have known of the dangerous propensities and the uses which were to be made of the product and that workers would be exposed to it,

failed to take any measures to warn persons of the dangerous propensities or to correct them.

Broadly speaking, negligence is the failure to conform one's conduct to a standard of duty prescribed by legislative authority or to conform it to the common-law requirement to exercise reasonable care under the circumstances. *Farrington* v. *Cheponis,* 84 Conn. 1, 8, 78 A. 652. The defendant was not the manufacturer of Coatatub but a wholesaler or distributor of the product, which it received in a sealed can from the manufacturer and sold to Seligman in the same container in which it was received. The defendant performs no tests on the products it sells but looks to the company selling it to determine whether it is a good company or whether it has a good product. If it gets complaints to the effect that the product is unsuitable, it ceases to buy it and buys another product of better reputation. With the exception of the plaintiff's complaint, no complaints about Coatatub have been received by the defendant. The plaintiff claims that the defendant was negligent because it "knew or should have known" of the dangerous propensities of the product and "yet having said knowledge" failed "to take any measures to warn persons of said dangerous propensities or to correct the same."

The law concerning liability in negligence of a supplier of a product likely to be dangerous is well set out in volume 2 of the Restatment (Second) of Torts. Section 401 states: "A seller of a chattel manufactured by a third person who knows or has reason to know that the chattel is, or is likely to be, dangerous when used by a person to whom it is delivered or for whose use it is supplied, or to others whom the seller should expect to share in or be endangered by its use, is subject to liability for

bodily harm caused thereby to them if he fails to exercise reasonable care to inform them of the danger or otherwise to protect them against it." Section 402, however, states: "A seller of a chattel manufactured by a third person, who neither knows or has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or condition of the chattel because of his failure to discover the danger by an inspection or test of the chattel before selling it."

Section 401, comment a, of volume 2 of the Restatement (Second) of Torts states that the words "reason to know" are used "to denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists or that such person would govern his conduct upon the assumption that such fact exists." The comment continues: "The words 'reason to know' do not impose any duty to ascertain unknown facts, and are to be distinguished from the words 'should know'. . . ." Comment i of § 401 states in part: "The fact that the defect could have been discovered by the seller, or that a reasonable man would have discovered it, is not enough to impose liability under the rule stated in this Section. The important question is what he did know, and what would a reasonable man conclude from that knowledge." See reporter's notes to § 402 in the Appendix to Restatement (Second) of Torts for a discussion of cases and the distinction between "should know", which imposes a duty to inspect, and "reason to know", which does not. See also Eldredge, Modern Tort Problems, pp. 269–84.

It is the majority view that one who purchases

from a reputable manufacturer and sells a product under circumstances where he is a mere conduit of the product is under no affirmative duty to inspect the product or to test for a latent defect, and, therefore, liability cannot be based on a failure to inspect or to test in order to discover some defect and warn against it. This is particularly true where the product is sold, as in this instance, in the original package in the condition in which it was received from the manufacturer. See note, 6 A.L.R.3d 12, 22, 25; 2 Frumer & Friedman, Products Liability § 18.03 [1] [a]; comment, "Products Liability in Connecticut—A Survey," 40 Conn. B.J. 155, 164–68.

Although in the first count the plaintiff alleged that the defendant "knew or should have known" of the claimed dangerous propensities of Coatatub and that "having said knowledge" it failed to take any measures to warn persons of the dangerous propensities, we find nothing whatsoever in the record or in the appendix to the brief of the plaintiff to support this allegation. The basis of the defendant's appeal is that the court erred in denying its motion for judgment notwithstanding the verdict as to the first count of the complaint because no evidence was introduced which could support a verdict for the plaintiff as to this count. The defendant in its brief pursued this assignment of error. Under these circumstances, if there was any evidence which would support a finding that the defendant knew or had reason to know of the claimed dangerous propensities of the product and that it was negligent in failing to give any warning of that hazard other than that printed on the container by the manufacturer, it was incumbent upon the plaintiff to print such evidence in the appendix to his brief. Practice Book § 718; *Smith* v. *Housing Authority,*

144 Conn. 13, 14, 127 A.2d 45; see also *Farlow* v. *Andrews Corporation,* 154 Conn. 220, 226, 224 A.2d 546; *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 498, 208 A.2d 748; Maltbie, Conn. App. Proc. § 330. Not only does the plaintiff's appendix fail to refer to any evidence to support his claim of knowledge or reason to have such knowledge on the part of the defendant but no such claim is argued in his brief. Under these circumstances we can only conclude that, as the defendant claims, no evidence was adduced to prove that the defendant was negligent as alleged. See Practice Book § 721. The court, accordingly, on the first count should have not only set aside the verdict but granted the defendant's motion for judgment notwithstanding the verdict.

There is no error on the plaintiff's appeal; there is error in part on the defendant's appeal, the judgment is affirmed except as regards the first count of the complaint and as to that count the case is remanded with direction to render judgment for the defendant on the first count notwithstanding the verdict.

In this opinion the other judges concurred.