WINIFRED NELSON, ADMINISTRATRIX (ESTATE OF DANE CLARK), ET AL. *v.* ERNEST S. STEFFENS

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued December 9, 1975—decision released March 16, 1976

*William F. Gallagher,* for the appellants (plaintiffs).

*George E. Tillinghast, Jr.,* with whom, on the brief, was *Joseph G. Lynch,* for the appellee (defendant).

LOISELLE, J. The complaint in this action, in the fourth count, alleges a cause of action in common-law negligence. The facts alleged are that the plaintiff's decedent, Dane Clark, and her other son, plaintiff Timothy Clark, were passengers in a motor vehicle operated by Peter DeLise when the vehicle went out of control and struck two trees off route 145 in Westbrook. Dane and Timothy Clark suffered serious injuries from which Dane ultimately died and from which Timothy continues to suffer.

A short time prior to the accident DeLise, a minor, was a patron in the defendant's establishment where DeLise was sold liquor while he was intoxicated. It is further alleged that the occurrence was due to the negligence of the defendant in that: he served intoxicating liquor to DeLise causing DeLise to become intoxicated, knowing that he was a minor and that he intended to drive from the defendant's establishment; he violated state laws in serving liquor to a minor, a consequence of which was intoxication; and he violated state laws in serving liquor to a minor after he had become intoxicated. The defendant demurred to this count because it stated a cause of action not recognized at common law. The court sustained the demurrer and the plaintiffs have appealed.

In *Nolan* v. *Morelli,* 154 Conn. 432, 226 A.2d 383, this state followed the common-law rule regarding the issue of liability of a vendor of intoxicating liquors to one who has suffered injury or damage caused by the intoxication of the purchaser of the liquor. It was therein stated (p. 436) : "At common law it was the general rule that no tort cause of action lay against one who furnished, whether by sale or gift, intoxicating liquor to a person who thereby voluntarily became intoxicated and in consequence of his intoxication injured the person or property either of himself or of another. The reason generally given for the rule was that the proximate cause of the intoxication was not the furnishing of the liquor, but the consumption of it by the purchaser or donee. The rule was based on the obvious fact that one could not become intoxicated by reason of liquor furnished him if he did not drink it. . . . [45 Am. Jur. 2d, Intoxicating Liquors, §§ 553–555] ; 48 C.J.S. 716, Intoxicating Liquors, § 430; see note,

54 A.L.R.2d 1152. Although this court has not had occasion directly to approve the common-law rule, it has given strong intimation of a recognition of the rule in *Pierce* v. *Albanese,* . . . [144 Conn. 241, 249, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21], and *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 59, 119 A.2d 325. And the Superior Court directly adopted the common-law rule in *Noonan* v. *Galick,* 19 Conn. Sup. 308, 310, 112 A.2d 892." Adherence to the common-law rule was again expressed in *Moore* v. *Bunk,* 154 Conn. 644, 647, 228 A.2d 510. See also 75 A.L.R.2d 833. The *Nolan* case traced the origin of General Statutes § 30-102, commonly called the dram shop act, to its origin in 1872 when it was first enacted to overcome to some extent the overly harsh common-law rule.[1] The statute did not abrogate any

[1] "[General Statutes] Sec. 30-102. LIQUOR SELLER LIABLE FOR DAMAGE BY INTOXICATED PERSONS, NOTICE OF ACTION. If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of fifty thousand dollars, to be recovered in an action under this section, provided the aggrieved person or persons shall give written notice to such seller within sixty days of the occurrence of such injury to person or property of his or their intention to bring an action under this section. In computing such sixty day period, the time between the death or incapacity of any aggrieved person and the appointment of an executor, administrator, conservator or guardian of his estate shall be excluded, except that the time so excluded shall not exceed one hundred twenty days. Such notice shall specify the time, the date and the person to whom such sale was made, the name and address of the person injured or whose property was damaged, and the time, date and place where the injury to person or property occurred. No action under the provisions of this section shall be brought but within one year from the date of the act or omission complained of."

The sentence relating to notification by an estate was added by Public Acts 1974, No. 74-144.

common-law remedy, which, under any circumstances, could otherwise exist against a seller, as such, of intoxicating liquor. *Nolan* v. *Morelli,* supra, 439 n.2, 441–44. Its purpose was to provide a cause of action to one injured by an intoxicated person against a vendor when it is shown that there was (1) a sale of intoxicating liquor (2) to an intoxicated person (3) who, in consequence of such intoxication, causes injury to the person or property of another. *London & Lancashire Indemnity Co.* v. *Duryea,* supra, 57. It, therefore, requires no causal relation between the sale and the injury. *Pierce* v. *Albanese,* supra, 246.

The plaintiffs recognize that the settled law in this state and in the majority of jurisdictions is the common-law rule. They claim, however, that the "modern trend" is to impose liability on the seller. They reason that if a jury finds that an unlawful sale was negligent, then it could reasonably find that the seller's negligence was a substantial factor in the plaintiff's injury or damage. The cases of *Nolan* v. *Morelli,* supra, and *Moore* v. *Bunk,* supra, declare that, as a matter of law, the negligent act of a seller or donor of intoxicating beverages is not a substantial factor in the plaintiff's injury. It is noteworthy that most of the cases cited by the plaintiffs in support of their claims are from jurisdictions where there is no dram shop act or where such an act does not have extraterritorial effect.

For over one hundred years, except for those years when the eighteenth amendment to the federal constitution was in effect, this state has determined by its adherence to the common-law rule, as modified by the dram shop act, that the reasoning by both the courts and the legislature was best suited

and was in the best interests of the citizens of this state. There is no compelling reason advanced by these plaintiffs as to why the common-law rule should be abrogated. It appears that an important purpose of their request is that they not be limited in their recovery by the ceiling in the dram shop act.[2] Changing the limitation is a matter for the legislature. If the damage limitation is inadequate, then the proper remedy is to increase the statutory limitation by legislative enactment rather than by overturning established judicial principles and precedents. The court was not in error in sustaining the demurrer to the fourth count of the complaint.

There is no error.

In this opinion HOUSE, C. J., LONGO and BARBER, Js., concurred.

BOGDANSKI, J. (dissenting). In my judgment the demurrer should have been overruled. The plaintiffs' complaint alleged facts which, if found to be true, would constitute negligent conduct. "[N]egligence is the failure to conform one's conduct to a standard of duty proscribed by legislative authority or to conform it to the common-law requirement to exercise reasonable care under the circumstances." *Guglielmo* v. *Klausner Supply Co.,* 158 Conn. 308, 318, 259 A.2d 608. Certainly, a jury would not be remiss in determining that a tavern owner had breached his common-law duty of ordinary care in serving alcoholic beverages to an intoxicated person or a minor. Moreover, General Statutes § 30-86, which prohibits sales of alcoholic liquor to minors or intoxicated persons, was not enacted solely to

---

[2] Section 30-102 limits damages to $20,000 per injured person up to an aggregate amount of $50,000.

protect those groups, but also to protect the public from the consequences of the excessive use of alcoholic liquor. Cf. *Bania* v. *New Hartford,* 138 Conn. 172, 177, 83 A.2d 165. The defendant's alleged conduct in making a sale in violation of the statute, therefore, would constitute negligence per se. *Panaroni* v. *Johnson,* 158 Conn. 92, 256 A.2d 246; *Buravski* v. *DiMeola,* 141 Conn. 726, 109 A.2d 867.

The old rule precluded recovery from a vendor of liquor for mischief done by an intoxicated person to whom he had negligently sold liquor. That rule was based upon the premise that, as a matter of law, it was not the sale of liquor by the vendor, but its consumption by the vendee, which was the proximate cause of resulting injuries. *Nolan* v. *Morelli,* 154 Conn. 432, 436–37, 226 A.2d 383. That premise is now regarded as antiquated and illogical, and that old view has been discarded or qualified in numerous jurisdictions. See, e.g., *Waynick* v. *Chicago's Last Department Store,* 269 F.2d 322 (7th Cir.); *Vance* v. *United States,* 355 F. Sup. 756 (D. Alas.); *Deeds* v. *United States,* 306 F. Sup. 348 (D. Mont.); *Vesely* v. *Sager,* 5 Cal. 3d 153, 486 P.2d 151; *Pike* v. *George,* 434 S.W.2d 626 (Ky. App.); *Colligan* v. *Cousar,* 38 Ill. App. 2d 392, 187 N.E.2d 292; *Adamian* v. *Three Sons, Inc.,* 353 Mass. 498, 233 N.E.2d 18; *Trail* v. *Christian,* 298 Minn. 101, 213 N.W.2d 618; *Rappaport* v. *Nichols,* 31 N.J. 188, 156 A.2d 1; *Berkeley* v. *Park,* 47 Misc. 2d 381, 262 N.Y.S.2d 290; *Mason* v. *Roberts,* 35 Ohio App. 2d 29, 300 N.E.2d 211, aff'd, 33 Ohio St. 2d 29, 294 N.E.2d 884; *Wiener* v. *Gamma Phi,* 258 Ore. 632, 485 P.2d 18; *Jardine* v. *Upper Darby Lodge No. 1973, Inc.,* 413 Pa. 626, 198 A.2d 550; see also *Davis* v. *Shiappacossee,* 155 So. 2d 365 (Fla.); *Ramsey* v. *Anctil,* 106 N.H. 375, 211 A.2d 900;

*Mitchell* v. *Ketner,* 54 Tenn. App. 656, 393 S.W.2d 755; note, "Liquor Vendor's Liability for Patron's Injuries to Third Persons," 48 B.U. L. Rev. 502; note, "Dram Shop Liability—A Judicial Response," 57 Cal. L. Rev. 995, 1005; comment, "Common Law Liability of Tavern Owners," 1971 Wash. U. L.Q. 645; King, "Common Law Liability of the Liquor Vendor," 18 Western Res. L. Rev. 251.

"It is elementary that, in a negligence case, a causal relation between a defendant's breach of duty and a plaintiff's injury must be established in order for the plaintiff to recover. . . . Whether a defendant's conduct was in fact a cause of a plaintiff's injuries is peculiarly a question of fact for the jury. *McDowell* v. *Federal Tea Co.,* 128 Conn. 437, 440, 23 A.2d 512; *Mahoney* v. *Beatman,* 110 Conn. 184, 195–97, 147 A. 762; Prosser, [Law of Torts (4th Ed.)] § 41, p. 237." *Merhi* v. *Becker,* 164 Conn. 516, 521, 325 A.2d 270. Litigants have a constitutional right to have genuine issues of fact determined by the jury, not by the court. Conn. Const., art. I § 19, amend. IV; *Spencer* v. *Good Earth Restaurant Corporation,* 164 Conn. 194, 319 A.2d 403; *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352. A court is justified in concluding that a particular event is not the proximate cause of an injury only if the minds of reasonable men could not reach the contrary conclusion. *Nistico* v. *Stephanak,* 140 Conn. 547, 550, 102 A.2d 357.

In Connecticut, the test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to

another which the actor's negligent conduct is a substantial factor in bringing about, if (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent." Restatement (Second), 2 Torts § 447, p. 478; see *Merhi* v. *Becker,* supra. Cf. *Stulginski* v. *Waterbury Rolling Mills Co.,* 124 Conn. 355, 362, 199 A. 653. "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." Restatement (Second), 2 Torts § 449, p. 482; see *Cuneo* v. *Connecticut Co.,* 124 Conn. 647, 651, 2 A.2d 220.

In the horse-and-buggy days, when the rule adhered to by the majority took root, a reasonable barkeeper would not have foreseen that an intoxicated minor patron to whom he had sold liquor might cause serious harm to other persons. That is no longer true today. The problem of drunken driving is one of national proportions. Alcohol was related to more than half of the 46,200 motor vehicle accident fatalities which occurred in 1974, and a similar ratio is believed to exist with respect to the more than 1,000,000 nonfatal accidents. National Safety Council, Accident Facts (1975 Ed.), p. 52. With the tragic intoxication-caused accidents which occur daily, a jury could reasonably deter-

mine that the defendant in the present case could reasonably have foreseen the possible consequences of serving liquor to a minor, and that the serving of liquor to a minor was a substantial factor in causing the alleged resultant injuries.[1] The act of a patron in consuming liquor may certainly be considered

[1] The reasoning of the Supreme Court of New Jersey in the leading case of *Rappaport* v. *Nichols*, 31 N.J. 188, 204, 156 A.2d 1, is squarely on point. "If, as we must assume at this stage of the proceeding, the defendant tavern keepers unlawfully and negligently sold alcoholic beverages to Nichols causing his intoxication, which in turn caused or contributed to his negligent operation of the motor vehicle at the time of the fatal accident, then a jury could reasonably find that the plaintiff's injuries resulted in the ordinary course of events from the defendants' negligence and that such negligence was, in fact, a substantial factor in bringing them about. And a jury could also reasonably find that Nichols' negligent operation of his motor vehicle after leaving the defendants' taverns was a normal incident of the risk they created, or an event which they could reasonably have foreseen, and that consequently there was no effective breach in the chain of causation. In the light of the foregoing, we are in no position to hold that as a matter of law there could have been no proximate causal relation between the defendants' unlawful and negligent conduct and the plaintiff's injuries."

Also worthy of note is *Vesely* v. *Sager*, 5 Cal. 3d 153, 163–64, 486 P.2d 151, where the California Supreme Court stated: "To the extent that the common law rule of nonliability is based on concepts of proximate cause, we are persuaded by the reasoning of the cases that have abandoned that rule. . . . Under these principles an actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct. . . .

"Insofar as proximate cause is concerned, we find no basis for a distinction founded solely on the fact that the consumption of an alcoholic beverage is a voluntary act of the consumer and is a link in the chain of causation from the furnishing of the beverage to the injury resulting from intoxication. Under the above principles of proximate cause, it is clear that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a third person. If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the hazards which makes such furnishing negligent."

a contributing factor to injuries sustained in an automobile accident, but whether it is such an intervening cause as would break the chain of foreseeable results emanating from the original negligent act is a question for the jury.

The majority have concluded, however, that the old view as modified by the dram shop act expresses a policy of this state which is best suited to the interests of our citizens. They suggest that if the damage limitations of § 30-102 of the General Statutes are inadequate, relief should be sought in the legislature, not in the courts.

I am unable to join in that reasoning. There is no specific provision in § 30-102 which bars a common-law action or otherwise preempts the field of liability of a seller of liquor. Moreover, § 30-102, which requires no showing of a causal relation between the sale and the injury, was enacted to fill the void left by the old rule's disallowance of any recovery from the barkeeper. The thrust of the dram shop statute is that it is in the public interest of the citizens of this state to be compensated for injuries received when a vendor of alcoholic liquor sells alcohol to an intoxicated person who brings about injuries. Since causation need not be shown, the damage limitations in the statute may be appropriate. There is absolutely no indication, however, that the legislature intended the dram shop act to be an exclusive remedy where a plaintiff is able to show that injuries were proximately caused by a barkeeper's negligence. See *Berkeley* v. *Park,* supra; cf. *Farmers Mutual Automobile Ins. Co.* v. *Gast,* 17 Wis. 2d 344, 117 N.W.2d 347. In my view, the primary responsibility for determining and

applying the common law remains with the court. If the common law is to retain its vitality, this court must keep it responsive to the times. I would, therefore, find error, set aside the judgment, and remand the case with direction to overrule the demurrer.