Barbra D. QUADRINI, as Executrix of
the Estate of Frank D. Quadrini, Jr.,
Deceased, et al.

v.

SIKORSKY AIRCRAFT DIVISION,
UNITED AIRCRAFT
CORPORATION.

Civ. No. B–74–81.

United States District Court,
D. Connecticut.

Jan. 6, 1977.

Theodore Koskoff, Bridgeport, Conn., Kreindler & Kreindler, New York City, for plaintiffs.

Shaun S. Sullivan, David A. Reif and William H. Prout, Jr., Wiggin & Dana, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND PARTIAL SUMMARY JUDGMENT

NEWMAN, District Judge.

The pending motions in this wrongful death action raise a host of challenging questions in the fields of federal jurisdiction, conflict of laws, contracts, and torts. The suit arises out of the death of two Marine Corps majors in the crash of a military helicopter that occurred in a federal enclave in North Carolina. The helicopter was manufactured by the defendant and sold to the United States in Connecticut.

Defendant has moved for partial judgment on the pleadings or partial summary judgment as to plaintiffs' claims based on breach of warranty and strict tort liability. Plaintiffs' claims based on negligence are not presently in issue. Defendant asserts that all of plaintiffs' claims should be adjudicated according to North Carolina substantive law, and that, under such law, the warranty claim fails for lack of privity and the strict liability claim fails because North Carolina does not recognize strict liability.

Jurisdiction is grounded both on diversity of citizenship, 28 U.S.C. § 1332, and federal question, 28 U.S.C. § 1331, since the claims are alleged to arise under a federal statute governing wrongful deaths within a federal enclave, 16 U.S.C. § 457. The statute provides:

> In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any state, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be.

Determining the applicable substantive law to be applied to each of the claims in this suit is complicated by the fact that jurisdiction is predicated on both diversity of citizenship and federal question. If this were only a diversity case, state law would apply, *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188

(1938), and the conflicts rules of the forum state, Connecticut, would determine which state's substantive law would apply, *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). But because the claims also arise under a federal statute, an inquiry must be made to determine what the federal statute says or implies as to what substantial law is applicable: federal law or state law, and, if state law, which state. A federal statute can either (1) supply federal substantive law, (2) manifest a Congressional intention to have federal courts fashion federal common law, (3) direct, as a matter of federal law, the application of state law, or, (4) if it does none of these, leave the federal courts to apply state law directly. Both of the last two options would still require a decision as to whether a federal or state conflicts rule should be used to select the appropriate state law. I assume that whatever substantive law is found to be applicable in the exercise of this Court's federal question jurisdiction should govern the lawsuit, even though a contrary result might be reached if only diversity jurisdiction existed. It seems to be a fair inference from the Supremacy Clause that whatever decision a federal court is impelled to reach in the exercise of its federal question jurisdiction must prevail over contrary results that would be reached if the Court were functioning essentially as a state court in the exercise of diversity jurisdiction.

 Analysis of § 457 can confidently begin with an assertion that it at least creates a cause of action that would not exist in the absence of the statute. Even if the federal statute provided no clue as to the content or source of applicable substantive law, a suit under § 457 would arise under federal law sufficiently to have jurisdiction supplied by 28 U.S.C. § 1331. See *Mater v. Holley,* 200 F.2d 123, 124–25 (5th Cir. 1952); see generally *Macomber v. Bose,* 401 F.2d 545, 546 (9th Cir. 1968); *Stokes v. Adair,* 265 F.2d 662 (4th Cir. 1959). The cause of action derives from the federal statute, see *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916); at a mini-

mum an aspect of federal law is essential to plaintiffs' success, see *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921). However, the search for the applicable substantive law to decide the case is more perplexing.

 Plainly the statute does not itself supply standards of federal substantive law. Nor is there any sound basis for concluding that the statute was intended to authorize federal courts to fashion a body of federal common law to effectuate federal policies. *Cf. Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). If there were a federal interest in providing national uniform rules of decision for all wrongful deaths occurring on all federal enclaves, federal common law could be fashioned to govern the substantive liability of the parties. *Cf. Kohr v. Allegheny Airlines, Inc.,* 504 F.2d 400 (7th Cir. 1974). There is no reason to believe that Congress intended such a result. The general rule is that the law existing at the time of the surrender of state sovereignty will be adopted by a court to govern the substantive rights of persons within a federal territory. *Chicago, Rock Island & Pacific Ry. Co. v. McGlinn,* 114 U.S. 542, 5 S.Ct. 1005, 29 L.Ed. 270 (1885). If Congress had intended that federal courts develop a body of substantive common law to govern a wrongful death case without reference to the prior law of the state in which the enclave is located, it would have clearly expressed that desire. Furthermore, there is little, if any, federal interest to be served by subjecting a party whose acts took place in a federal enclave on one coast of the country to the same federally fashioned substantive rules of decision as another individual whose acts took place in a federal enclave at the other end of the country.

 The third possibility is that the federal statute directs, as a matter of federal law, the application of state law. See *e.g., International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW), AFL–CIO v. Hoo-*

*sier Cardinal Corp.,* 383 U.S. 696, 705, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). That is the position apparently assumed by the parties, although they differ as to how the federal statute accomplishes this result. Defendant argues that § 457 directs a reference to the substantive law of the state surrounding the enclave in which the injuries occur. Plaintiffs contend that § 457 directs a reference to the whole body of law of the state surrounding the enclave, including that state's conflict of laws principles. To resolve this issue the parties debate the pertinence of *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), in which the Supreme Court construed a somewhat analogous provision of the Federal Tort Claims Act, 28 U.S.C. § 1346(b). That section provides that the federal government is liable to the claimant "in accordance with the law of the place where the act or omission occurred." The Court concluded that this provision refers a court to the whole law of the state where the act or omission occurred, including its conflicts rules, and not just to the state's substantive law.

While *Richards* in all likelihood would provide the answer if § 457 were truly analogous to the Tort Claims Act, the fact is that the statutes, in wording and legislative history, reflect a key difference. The Tort Claims Act plainly applies state law, as a matter of federal law, to issues of liability by providing that the "liability" of the government to the claimant shall be "in accordance with" the law of the state of the tort. Section 457 says the "rights of the parties" shall be governed by the law of the state surrounding the enclave. While "rights of the parties" could refer to the standards for determining liability of one party to the other, the phrase could also refer only to the determination of which parties have the right to bring a wrongful death action. The legislative history supports the latter, more limited construction.

▌ When the bill was introduced for floor consideration in the Senate, Senator Robinson of Arkansas asked for an ex-

planation of the Act. Senator Walsh answered:

> [I]t is intended practically to make the application of what is known as Lord Campbell's Act to places within the exclusive jurisdiction of the United States. Practically every State now has given a right of action to the legal representatives of the dependent relatives of one who has suffered a death by reason of the neglect or wrongful act of another, there being no such recovery, it will be recalled, at common law.

> There are a great many places in the United States under the exclusive jurisdiction of the United States—the national parks, for instance. If a death should occur within those places, within the exclusive jurisdiction of the United States, there would be no right of recovery on the part of the representatives or dependents of the person who thus suffered death as a result of the wrongful act or neglect of another. . . .

> MR. ROBINSON: . . . This act would make the State law applicable?

> MR. WALSH: . . . It would; so that if under the law of Arkansas a right of recovery could be had if the death occurred outside of the national park, the same right of action would exist if it occurred in the national park.

> MR. BRUCE: . . . In other words, as I understand it, it is intended to meet the common-law principle that a personal action dies with the death of the person?

> MR. WALSH: . . . Exactly.

69 Cong.Rec. 1486 (Jan. 14, 1928). This colloquy evidences the intent of Congress that § 457 was designed solely to make the survival statute of the jurisdiction surrounding the federal enclave applicable to cases in which a death occurred within the enclave. Nothing in the legislative history demonstrates that Congress intended § 457 to require application of the whole law or the substantive law of the place of injury in determining issues of liability. The first clause of the statute provides for the existence of a "right of action" as it would exist if "the place were under the jurisdiction of

the State within whose exterior boundaries such place may be." This first clause made state law applicable in the enclave only insofar as the state law removed the common law bar to the existence of a right of action for wrongful death, but did not indicate in which living person that right would be vested. See generally *Jones v. Pledger,* 124 U.S.App.D.C. 254, 363 F.2d 986, 988 (1966). The second clause of the statute then refers to state law to determine "the rights of the parties," *i. e.,* which persons possessed the right created in clause one. Thus a plaintiff who could not bring suit under the state survival statute but who would be a common law heir of the decedent was foreclosed from arguing that § 457 created a right in the decedent which could be enforced by such a plaintiff instead of by the person specified by the state wrongful death statute.

Some uncertainty concerning the scope of § 457 has arisen from the Supreme Court's opinion in *Murray v. Joe Gerrick & Co.,* 291 U.S. 315, 54 S.Ct. 432, 78 L.Ed. 821 (1934). In that case the widow and minor child of an employee killed on a federal enclave attempted to sue under a state workman's compensation act, and the Supreme Court held that no cause of action existed because § 457 did not provide the basis for a lawsuit under a state statute that did not create an action at law. The Court clearly held that the purpose of § 457 "was only to authorize suits under a state statute abolishing the common law rule that the death of the injured person abates the action for negligence." *Id.* at 319, 54 S.Ct. at 433.

■ Properly read, the Supreme Court's opinion views § 457 as limited to the creation of a right to sue on the part of those authorized by state law, but some courts have read § 457 in light of *Murray* to require application of the substantive law of the state surrounding the enclave in which the death occurred. *Ashley v. United States,* 215 F.Supp. 39 (D.Neb.1963); *Byrd v. Napoleon Avenue Ferry Co.,* 125 F.Supp. 573 (E.D.La.1954).[1] There is no indication that the legislative history of § 457 was ever called to the attention of these courts. That legislative history persuades me that § 457 should be construed narrowly so as to provide no reference to state law, as a matter of federal law, for deciding issues of liability, nor to contain any implication as to applicable choice of law rules.

■ The statute, thus construed, simply creates the right to bring a wrongful death action whenever the law of the state surrounding the enclave permits, refers to state law only to determine if the action can be brought and who has the right to bring it, and leaves the federal court to apply state law directly, *i.e.,* not as federal law, on issues of liability. This construction brushes against the issues raised by Justice Frankfurter's dissent in *Lincoln Mills* as to whether federal question jurisdiction can constitutionally be conferred on a federal district court if the statute under which the cause of action arises supplies no substantive federal law (either within the statute, or by authorizing development of federal common law, or by directing the application of state law as federal law). It is not necessary in this case to explore the outer limits of the "protective" jurisdiction that Justice Frankfurter found to be of such doubtful constitutionality, because § 457, concerning as it does federal enclaves, relates to federal interests as substantially as the statute that authorized the Bank to sue in *Osborn v. Bank of United States,* 9 Wheat. 738, 6 L.Ed. 204 (1824). To countenance a protective jurisdiction over claims arising in federal enclaves, over which residual Congressional authority to legislate is clear, U.S.Const., Art. I, § 8, does not risk the broad expansion of Article III that Justice Frankfurter feared if protective jurisdiction were related to the Commerce

---

1. In this Circuit, Judge Learned Hand at one time believed that in a lawsuit involving an injury sustained while a ship was in drydock, recovery could be had in accordance with substantive state law under § 457, *Puleo v. H. E. Moss & Co.,* 159 F.2d 842 (2d Cir. 1947), but later had doubts that § 457 would provide a basis for such a lawsuit, *Guerrini v. United States,* 167 F.2d 352 (2d Cir. 1948). *Puleo* does not control this case, *see Moragne v. States Marine Lines,* 398 U.S. 375, 402 n. 16, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

Clause. *Cf. Williams v. Austrian,* 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947) (federal jurisdiction for suit by trustee in bankruptcy governed by state law).

■ Once it is determined that state law, as state law, is to govern issues of liability, a choice of law problem arises, and the next question is whether the choice of law rules should be selected according to *Klaxon,* as they would be in diversity jurisdiction, or fashioned according to a body of federal conflicts law, since this Court is exercising federal question jurisdiction. The question has not been authoritatively resolved. See *UAW v. Hoosier Cardinal Corp., supra,* 383 U.S. at 705, n. 8, 86 S.Ct. 1107; *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 371 n. 2, 65 S.Ct. 405, 89 L.Ed. 305 (1945); *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.,* 315 U.S. 447, 456, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Whatever the supposed virtues of applying the conflicts rules of the forum state in diversity jurisdiction, when a district court is, to a considerable extent, functioning as a state court, similar considerations do not justify permitting the accident of a particular local forum to determine choice of law rules in a federal question case. It would be especially anomalous to use the conflicts rules of the forum state per *Klaxon* to select applicable state substantive law in a federal question case arising under a federal statute enacted in 1928, prior to *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a time when even in diversity cases federal common law determined issues of substance. *Swift v. Tyson,* 16 Pet. 1, 10 L.Ed. 865 (1842).

■ Those claims of the plaintiffs that sound in tort should be governed by the law of the place of the crash, the federal enclave in North Carolina. The helicopter was in use at the air station and the two decedents either lived on the enclave or in North Carolina. Whatever relationship existed between plaintiffs' decedents and the defendant was centered around the federal enclave. Thus the enclave is the location with the most significant relationship with the events and the parties involved in the crash.[2] People reasonably expect that the place where they engage in conduct will normally supply the standards by which liability is to be judged, and the decedents would reasonably have expected that their place of work and residence, would supply the standard of liability for wrongs committed in that place. Both the contacts with the place of the crash and the expectations of the parties point to an application of the law of the enclave to the tort claims.

■ Absent federal legislation specifically prescribing rules of decision for a federal enclave, the law existing at the time of the surrender of state sovereignty governs the substantive rights of persons within the federal territory. *James Stewart & Co. v. Sadrakula,* 309 U.S. 94, 99–100, 60 S.Ct. 431, 84 L.Ed. 596 (1940). The state common law rules in effect at the time of cession also become the law of the enclave until displaced by act of Congress. *Arlington Hotel Co. v. Fant,* 278 U.S. 439, 445, 49 S.Ct. 227, 73 L.Ed. 447 (1929). Therefore the tort law of North Carolina as it existed on April 3, 1941,[3] the time the enclave was ceded to the United States, governs the tort claims in this case.

2. This analysis proceeds along the guidelines set forth in Restatement (Second) of Conflict of Laws § 145 (1971):

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

3. The date of the cession is provided by documents contained in Plaintiff's Motion for Leave to File Memorandum of Law, Exhibit A.

The cause of action in strict tort liability fails to state a claim because North Carolina did not recognize such a cause of action in 1941, and still does not today. *Wyatt v. North Carolina Equipment Co.,* 253 N.C. 355, 117 S.E.2d 21 (1960).[4] Plaintiffs do not seriously contend that the North Carolina courts have adopted strict liability but rather argue that the courts have never been called upon to consider the theory. Whatever the validity of this argument would be if made to a court exercising solely diversity jurisdiction,[5] it is of no avail to these plaintiffs because the relevant law in the enclave is that which existed in 1941. Absent some North Carolina rule of law affirmatively demonstrating the availability of such a claim in 1941, the plaintiffs fail to state a cause of action. Therefore the motion to dismiss the cause of action in strict liability is granted.

Defendant has argued that plaintiffs' contract claims are barred because a contractual theory of recovery is not available under the North Carolina wrongful death statute, which governs this case by virtue of § 457. Sikorsky quotes the broad language of *Mann v. Henderson,* 261 N.C. 338, 134 S.E.2d 626 (1964): "Any recovery for wrongful death must be based . . . [on] general rules of tort liability." However, *Mann* did not present the North Carolina Supreme Court with a claim of contractual liability and the quoted language, when read in context, refers to a novel tort theory claimed to govern that case. The opinion does not support Sikorsky's position that the North Carolina Court has foreclosed the possibility of a recovery on a contractual theory in a wrongful death case, and the other cases cited by the defendant in its brief similarly fail to bolster its argument. North Carolina courts have simply not considered this problem. See *Harris v. Wright,* 268 N.C. 654, 151 S.E.2d 563 (1966); *Hargett v. Gastonia Air Service,* 23 N.C.App. 636, 209 S.E.2d 518 (1974); see generally Comment, the New North Carolina Wrongful Death Statute, 48 N.C.L.Rev. 594 (1970). Absent some specific indication from the North Carolina Court in a case where the point was in issue, the North Carolina wrongful death statute should not be construed to preclude a contractual theory of recovery.[6]

Plaintiffs' claims based upon breach of express and implied warranty are contractual in nature. In the absence of a contractual provision setting forth the parties' choice of law, the contract law of Connecticut, the defendant's principal place of business and the place of the making of the contract as well as the delivery of the helicopter should govern the warranty claims.[7]

---

**4.** Other North Carolina cases on this subject are: *Tedder v. Pepsi-Cola Bottling Co.,* 270 N.C. 301, 154 S.E.2d 337 (1967); *Terry v. Double Cola Bottling Co.,* 263 N.C. 1, 138 S.E.2d 753 (1964); *Alexander Funeral Home, Inc. v. Pride,* 261 N.C. 723, 136 S.E.2d 120 (1964); *Perfecting Service Co. v. Product Development & Sales Co.,* 261 N.C. 660, 136 S.E.2d 56 (1964); *Murray v. Bensen Aircraft Corp.,* 259 N.C. 638, 131 S.E.2d 367 (1963).

**5.** Were the opinions of the North Carolina Courts less clear as to the availability of strict liability, an argument advanced to a diversity court to anticipate a change in state law might be persuasive. *See Patch v. Stanley Works,* 448 F.2d 483 (2d Cir. 1971). But there is an abundance of North Carolina law on this topic, *cf. Ricciuti v. Voltarc Tubes, Inc.,* 277 F.2d 809 (2d Cir. 1960). Under these circumstances even a district court exercising only diversity jurisdiction may not appropriately forecast a significant change in state law. *See Hausman v. Buckley,* 299 F.2d 696, 704 (2d Cir. 1962).

**6.** The North Carolina Wrongful Death statute states:

> When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled him to an action for damages therefor, the person or corporation that would have been so liable . . . shall be liable to an action for damages, to be brought by the personal representative or collector of the decedent. . . .

N.C.G.S. 28A–18–2 (1975).

A death caused by an act that breaches an express or implied warranty is one caused by a "wrongful act." On its face, the statute does not limit a plaintiff to a theory of recovery sounding in tort.

**7.** This analysis proceeds along the guidelines set forth in Restatement (Second) of Conflicts of Law § 188 (1971):

> (2) In the absence of an effective choice of law by the parties . . . ., the contacts to be taken into account in applying the princi-

Those claims arise out of the breach of the relationship entered into by the defendant and the United States that was consummated in Connecticut, whereby the United States agreed to pay the defendant money in exchange for a helicopter that was warranted to perform in a certain manner. If the helicopter failed to perform in that manner, causing the deaths of plaintiffs' decedents, a breach of the contract entered into in Connecticut may have occurred. Thus it is Connecticut contract law that is most intimately involved with these claims. Connecticut has an interest in having that law applied to this case, because the State has set forth a social and economic policy embodied in its law of warranty that should govern contractual relationships commenced in Connecticut. Connecticut has an interest in requiring parties who make representations to other parties within its borders to adhere to those representations or face legal consequences for the failure to do so. At a minimum, this policy encourages buyers to enter this state and make contracts here, secure in the knowledge that the contractual protections afforded by Connecticut law will be available to them.

A recovery on an implied or express warranty claim without privity is available under Connecticut law. *Wachtel v. Rosol,* 159 Conn. 496, 271 A.2d 84 (1970); *Guglielmo v. Klausner Supply Co.,* 158 Conn. 308, 259 A.2d 608 (1969); *Koellmer v. Chrysler Motors Corp.,* 6 Conn.Cir. 478, 276 A.2d 807 (App.Div.1970); *Tomczuk v. Town of Cheshire,* 26 Conn.Sup. 219, 217 A.2d 71 (Sup.Ct. Tolland County 1965); *Connolly v. Hagi,* 24 Conn.Sup. 198, 188 A.2d 884 (Sup.Ct. Hartford County 1963); *Simpson v. Powered Products of Michigan, Inc.,* 24 Conn.Sup. 409, 192 A.2d 555 (Ct. Common Pleas Hartford County 1963); *Cf. Rossignol*

*v. Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 227 A.2d 418 (1967); *Garthwait v. Burgio,* 153 Conn. 284, 216 A.2d 189 (1965). Accordingly, the claims based upon express and implied warranty cannot be defeated by this motion.

Defendant also argues that plaintiffs' express and implied warranty claims are time-barred. Generally, when Congress has created a federal right but not prescribed a period for its enforcement, federal courts will borrow the most closely analogous statute of limitations of the state in which the federal court sits.[8] *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *UAW v. Hoosier Cardinal Corp.,* supra; *Campbell v. Haverhill,* 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895); *cf. Bertha Building Corp. v. National Theatres Corp.,* 269 F.2d 785 (2d Cir. 1959). Defendant maintains that the plaintiffs' warranty claims are barred under the three-year limitation period imposed by Conn.Gen.Stat. § 52–555, Connecticut's wrongful death statute of limitations, or that imposed by Conn.Gen.Stat. § 52–577, Connecticut's tort statute of limitations.

The defendant relies upon two state trial court decisions to support its view that these warranty claims should be governed by the Connecticut tort statute of limitations. *Rempe v. General Electric Co.,* 28 Conn.Sup. 160, 254 A.2d 577 (Super.Ct. Hartford County 1969); *Abate v. Barkers of Wallingford, Inc.,* 27 Conn.Sup. 46, 229 A.2d 366 (Ct.Common Pleas New Haven County 1967). *Rempe* simply relies upon *Abate* and offers no independent support for defendant's position. *Abate* presented the Court of Common Pleas with a breach of warranty claim at a time when the Connecticut Supreme Court was in the midst of

---

ples of § 6 to determine the law applicable to an issue include:
(a) The place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance.
(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

8. A federal district court exercising only diversity jurisdiction must apply the applicable statute of limitations of the forum state. *Guaranty Trust of New York v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Thus the result as to this aspect of this case is the same whether jurisdiction is founded on diversity or federal question.

the process of adopting strict liability in tort. The *Abate* Court read the Connecticut Supreme Court's opinion in *Rossignol v. Danbury School of Aeronautics, Inc., supra,* in which Connecticut adopted strict liability, to foreclose the possibility that a warranty action could ever sound in contract. Later decisions of the Connecticut Supreme Court in *Wachtel v. Rosol, supra,* 159 Conn. at 502–03, 271 A.2d 84, and *Guglielmo v. Klausner Supply Co., supra,* 158 Conn. at 315–17, 259 A.2d 608, indicate that the highest court in this state is of the view that in a proper case a breach of warranty claim would state a contract claim wholly separate from a strict liability claim.[9] Thus the *Rossignol* language relied upon in *Abate* may have been read to stand for more than the State Supreme Court intended.

 In a case presenting a pure warranty claim sounding in contract, there is no reason to believe that the Connecticut Supreme Court would today apply the tort statute of limitations.[10] Since such a claim would, in all likelihood, arise under the Connecticut version of the warranty sections of the Uniform Commercial Code, Conn.Gen. Stat. § 42a–2–313 *et seq.,* it would be difficult to imagine a theory under which the U.C.C.'s four-year statute of limitations, Conn.Gen.Stat. § 42a–2–725(1) & (2), would not be held to control a contractual warranty claim.[11] The four-year period in a breach of warranty claim is to be measured from the time that "tender of delivery is made." Conn.Gen.Stat. § 42a–2–725(2). The United States provisionally accepted the helicopter on April 30, 1970,[12] and this lawsuit was filed on March 13, 1974. Therefore, the suit is timely and the motion for partial summary judgment as to the warranty claims must be denied.

Accordingly, the defendant's motion to dismiss plaintiffs' strict liability claim is granted. Defendant's motion to dismiss and motion for partial summary judgment on plaintiffs' claims sounding in contract are denied.

---

**9.** *Prokolkin v. General Motors Corp.,* 170 Conn. 289, 365 A.2d 1180 (1976), is not to the contrary. Although the original complaint in that case stated a claim in implied warranty, the trial court and the Supreme Court treated the amended complaint as one stating a claim in strict tort liability. The plaintiff apparently never pursued a contractual warranty theory of recovery and the Court's application of the tort statute of limitations in that case is no indication that it would not apply a contract statute of limitations to a contractual warranty claim. Certainly the state legislature thought *Prokolkin* controlled only a cause of action in strict liability. *See* P.A. 76–293 (June 4, 1976).

**10.** Decisions of state trial courts are, of course, entitled to respect, but need not be automatically followed especially in light of indications that the State Supreme Court would today decide the issue differently. *Julien J. Studley, Inc. v. Gulf Oil Corp.,* 425 F.2d 947, 950 (2d Cir. 1969); *Roginsky v. Richardson-Merrell, Inc.,* 378 F.2d 832, 851 (2d Cir. 1967).

**11.** Even if Connecticut's tort statute of limitations were held to apply to this case, the fact that the defect in the helicopter was concealed from the plaintiff's decedents until the moment of the crash might provide a basis for a federal court to toll the running of the statute of limitations under its equitable powers. *See Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80 (2d Cir. 1961).

**12.** Defendant's answers to interrogatories 1(a) and 1(d).