CAPETOLA et al. v. BARCLAY–WHITE CO.

No. 2397.

District Court, E. D. Pennsylvania.

Jan. 4, 1943.

materials used in the construction and furnished an operator who ran the engine which provided the power. The hoist was used by the general and all of the subcontractors engaged in the work. The subcontractor Kelly, furnished gasoline for the hoisting engine and was to have the use of the hoist when it was not being used by the general contractor. He also agreed to pay the overtime wages of the operator if it became necessary to operate the hoist beyond the usual working hours.

On December 16, 1941, Capetola was assigned by his employer to work at the navy yard where he was admitted after proper identification. On that day the hoist was being used to raise bricks from the ground to the third floor level. The bricklayers' laborers employed by Kelly wheeled two barrows onto the platform and gave a signal to the operator who caused it to be raised to the desired level. Capetola was stationed at the top level where he wheeled off the full barrows, replaced them with empties and signalled the operator to lower the platform. At about 5 P. M., after he had moved one loaded barrow and was in the act of moving the second, the lift platform fell or was dropped without signal from the third floor to the ground level, carrying him with it and causing him the serious injury for which this suit was brought. The operator of the lift did not appear at the trial and no testimony was offered as to the cause of the fall.

The contract between the general contractor and the subcontractor required the latter to carry workmen's compensation insurance, which was provided. After the accident the plaintiff, his employer and the insurer entered into a compensation agreement, which was filed with the State Workmen's Compensation Bureau, under which compensation was paid to the plaintiff together with medical expenses.

At the trial it was contended by the defendant that the plaintiff's rights were limited to those granted under the workmen's compensation laws and that he had no right of recovery in the present common law action. The issue was reserved and the jury was permitted to pass only upon the question of whether the hoist operator was a loaned servant for whose actions the subcontractor was responsible, and upon the question of negligence. The applicability of the state compensation laws to accidents occurring at the Philadelphia Navy Yard is the controlling issue to be determined.

John J. McDevitt, Jr., of Philadelphia, Pa., for plaintiffs.

Rawle & Henderson and Joseph W. Henderson, all of Philadelphia, Pa., for defendant.

WELSH, District Judge.

This matter is before the Court upon defendant's motion for judgment notwithstanding a verdict of $7,500 rendered by a jury in favor of the plaintiffs. The case involved an issue of law as to the applicability of the workmen's compensation laws by virtue of the following circumstances.

The minor plaintiff, John Capetola, Jr., was employed as a bricklayer's laborer by John B. Kelly, Inc., in August, 1941, and continued in that employment to December 16, 1941, the date of the accident out of which this case arises. The Kelly company was the brick work subcontractor under the defendant, Barclay-White Company, general contractor for the erection of a pattern shop building at the Philadelphia Navy Yard. The general contractor had erected a platform hoist or elevator adjacent to the building for the raising of

By legislative act, Feb. 10, 1863, P.L. 24, April 4, 1866, P.L. 96, 74 P.S. § 1 note, the Commonwealth of Pennsylvania consented to the purchase by the United States of the area covered by the Navy Yard and ceded the sovereignty and the right to exercise exclusive jurisdiction thereof, reserving only the right to service of criminal and civil process therein. Congress authorized acceptance of the area (February 18, 1867, 14 Stat. 396), the Secretary of the Navy certified to its acceptance (December 23, 1868), and the certificate was duly recorded in the office of the Recorder of Deeds of Philadelphia on December 24, 1868 (19 J.T.O. 2, Misc.Land Records 208).

The Pennsylvania Workmen's Compensation Act, June 2, 1915, P.L. 736, April 26, 1929, P.L. 829, April 29, 1929, P.L. 853, June 4, 1937, P.L. 1552, 77 P.S. § 1 et seq., established a system of compensation for injuries sustained by employees from all accidents occurring within the Commonwealth, and "accidents occurring to employes whose duties require them to go temporarily beyond the territorial limits of the Commonwealth, not over ninety days, when such employees are performing services for employers whose place of business is within the Commonwealth."

Some question existed as to whether or not persons on government property were entitled to the benefit of the local state laws and on February 1, 1928, Congress passed an act, 45 Stat. 54, 16 U.S.C.A. § 457, providing that "In the case of the death of any person * * * by the neglect or wrongful act of another within a * * * place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action * * * the rights of the parties shall be governed by the laws of the State * * *."

This act appears not to have specifically settled the question of jurisdiction as to compensation and a subsequent act, June 25, 1936, 49 Stat.1938, 40 U.S.C.A. § 290, was passed declaring that the constituted authorities of the several states charged with the enforcement of the state workmen's compensation laws "shall have the power and authority to apply such laws to all lands and premises owned or held by the United States of America by deed or act of cession, by purchase or otherwise, which is within the exterior boundaries of any State, and to all projects [therein] in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the State * * * [and the United States] hereby vests in the several States within whose exterior boundaries such place may be, insofar as the enforcement of State workmen's compensation laws are affected, the right, power, and authority aforesaid * * *."

The plaintiff denies the applicability of that act, contending that only the state laws in effect at the time of the cession continue in force within the ceded territory, and that acts passed subsequently are not effective unless expressly made so by Congressional act. James Stewart & Co. v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596, 127 A.L.R. 821. He further contends that the 1928 Act of Congress does not apply because it refers only to actions at law for injuries and not to the substituted systems of workmen's compensation (Murray v. Joe Gerrick & Co., 291 U.S. 315, 54 S.Ct. 432, 78 L.Ed. 821, 92 A.L.R. 1259) and that the Act of 1936 granting workmen's compensation jurisdiction to the states is not self-executing and therefore could not become effective in Pennsylvania without legislative sanction (State v. Rainier National Park Co., Inc., 192 Wash. 592, 74 P.2d 464, 467), which has not been given.

The defendant argues that the Pennsylvania workmen's compensation laws apply exclusively in that, within the contemplation of the act, Capetola was regularly employed by a Pennsylvania employer and was engaged temporarily beyond the "territorial limits" of the state, i. e. beyond the boundaries of sovereign jurisdiction, and not beyond the geographical "exterior boundaries" within the meaning of the Congressional Act of 1936. It further contends that even if the latter act is not "self-executing" it was in fact adopted as the law of the case by the acts of the plaintiff and his employer and insurer in entering into and accepting the benefits of the compensation agreement.

An examination of the law fails to disclose any binding precedent which would compel the conclusion that the federal act of 1936 is not effective in granting jurisdiction to the state without the subsequent sanction of the legislature. The authority relied upon by the plaintiff is State v. Rainier National Park Co., Inc., supra, in

which it is said that "Doubtless this act was passed to clarify the situation resulting from conflicting systems of relief", yet the conclusion was reached that such purpose may not be served unless the legislature shall thereafter expressly sanction the adoption of its laws as to compensation by the federal government. This seems to be somewhat illogical. The obvious intent of the act was to supply to employees on government property a remedy not previously afforded, and the act does not suggest that its benefits shall be contingent upon the formal approval thereof by the state legislatures. "If the * * * act * * * has any relevancy * * * it is to dispel any doubt * * * that persons injured in such territory shall be assured of the remedies provided by state law" (dissent in State v. Rainier National Park, supra). It is clear that the state act expressly extended its benefits to Pennsylvania employees temporarily beyond its territorial limits which would include, inter alia, the navy yard. The Congressional Act with equal clarity granted to the state authority the right to apply its compensation laws to employees engaged on government land within the exterior boundaries of the state. Can it be logically found that these laws are ineffectual because one was adopted before the other, or because the state law was passed first and did not expressly adopt the jurisdiction granted in the federal act, when the state act already covered the situation? The answer to that question is to be found in the purposes and the history of the legislation.

The compensation act of 1915 applied only to employees' injuries sustained in this state, and not to those beyond the jurisdictional limits of the state, including the navy yard. Haggerty v. O'Brien Bros., 21 Luz.L.Reg.Rep. 7. By amendment the jurisdiction was extended to accidents to Pennsylvania employees who were temporarily employed beyond the territorial limits of the state. The question as to whether such territorial jurisdiction included areas under United States sovereignty was, however, not settled. Congress therefore passed the Act of 1928 granting jurisdiction to the states in law cases, but without expressly including the remedies provided by the workmen's compensation laws. Finally the Act of 1936 was passed expressly and comprehensively granting to the workmen's compensation authorities of the states the right to apply the compensation laws to employees engaged on government property within the exterior boundaries of the state in which the property is located. Thus it would appear from the development of the law that the primary objective —the extension of the compensation laws to employees on federal property—has, by these successive steps, been fully accomplished.

. The old common law action, which by virtue of the law of negligence and of the fellow servant doctrine, has been generally deemed inadequate to protect the rights of employees. It should no longer be the sole remedy available to employees on government property in places where compensation laws are in force. Such common law action has been almost universally supplanted by the compensation systems and much has been accomplished for employees by virtue of those laws. It would be a step backward to hold, in the face of the declared policy of the Congress, as indicated in the 1936 Act, that the workmen of Pennsylvania employers working at the navy yard could not claim the remedies provided by the Pennsylvania laws passed for their benefit, simply because the legislature has not acknowledged the authority thus granted. Ceded property would thus become a sanctuary for the obsolete restrictions of the common law and a grave yard for the burial of every humane legislation passed for the benefit of the workers.

■ The plaintiffs' argument that, upon transfer of the sovereignty of a territory, the laws thereof continue in force until abrogated by the new government, and that therefore, as to the navy yard, the laws of recovery for injury in effect in 1863 are still the laws of that area, is not sound. To so hold it would be necessary to ignore the extra-territorial effect of the compensation act and the subsequent federal grant of jurisdiction within the exterior boundaries of the state. In construing the 1928 act declaring that "the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it [the government territory] may be", it has been said: "This plainly means the existing law, as declared from time to time by the state." Murray v. Joe Gerrick, supra [291 U.S. 315, 54 S.Ct. 434, 78 L.Ed. 821, 92 A.L.R. 1259].

We may therefore assume that the rights of employees in the navy yard are governed by the state laws as they existed in 1863, and as declared from time to time thereafter, and approved or made applica-

ble by the acts of Congress. Congress has chosen to expressly clarify the law and to declare that the Pennsylvania workmen's compensation laws as adopted by the state shall be applicable and available to employees on government property. It would be vain to deny the effectiveness of such declaration for want of a formal acknowledgement of jurisdiction already existing under the compensation act and we cannot agree with the plaintiff's position in this respect.

■■ The Pennsylvania Workmen's Compensation Act is by virtue of its terms and of the act of Congress, controlling as to the rights of the plaintiff. An opposite conclusion might in this case enable the plaintiff to recover more than he would under the compensation laws, inasmuch as the government would be charged with the amount of the recovery. This result could not require or justify a reversion to the common law and a denial to navy yard workers of their rights under the workmen's compensation acts. We therefore conclude that the plaintiff has no cause of action at common law and that his redress for the injuries suffered must be under the Pennsylvania Workmen's Compensation Act. Judgment should therefore be entered for the defendant notwithstanding the verdict.

There was submitted to the jury for their determination the question of whether the hoisting engine operator was a loaned agent in the service of the subcontractor, although counsel for defendant urged that this was a question of law for the Court. The question of negligence was also submitted to the jury in the face of the defense argument that negligence had not been proven and no recovery could be had. The jury found that the operator was not a loaned agent but was the agent of the defendant at the time of the accident. This finding is in conformity with the facts and it is likewise now concluded as a matter of law so that the rights of the defendant are fully protected. The jury's verdict indicates that they found the operator to have been negligent in the operation of the lift and there seems to have been some justification for such finding. Whether or not there was negligence or carelessness which imposed a liability upon the defendant is academic in view of our finding upon the controlling question as to the applicability of the compensation act. It is therefore unnecessary to extend our comments to cover the arguments of counsel on that point.

Defendant's motion for judgment notwithstanding the verdict is allowed and judgment may be entered accordingly.