**Rita Jean VASINA, as Executrix of the Estate of William Arthur Vasina, deceased, Plaintiff,**

v.

**GRUMMAN CORPORATION and Grumman Aerospace Corporation, Defendants.**

No. 74 C 1504.

United States District Court, E. D. New York.

June 27, 1980.

Kreindler & Kreindler, New York City (Marc S. Moller, Steven Earl Anderson, New York City, of counsel), for plaintiff.

Haight, Gardner, Poor & Havens, New York City (Maurice L. Noyer, John K. Weir, New York City, of counsel), for defendants.

NICKERSON, District Judge.

Plaintiff brought this diversity action to recover damages for the death of her husband, a lieutenant in the United States Navy, who was killed when the aircraft in which he was a bombadier-navigator crashed in Boardman Bombing Range, a federal enclave in Oregon. Plaintiff claimed that defendants, the manufacturers of the aircraft, were liable on both negligence and strict products liability theories. After a bifurcated trial, the jury found liability and then awarded $1,095,150 for pecuniary loss and $89,120 for loss of fatherly nurture, care and guidance. Defendant now moves for an order pursuant to Rule 50(b) of the Federal Rules of Civil Procedure for judgment *non obstante veredicto*, or, in the alternative, for an order pursuant to Rule 59 directing a new trial as to damages.

Defendants claim that plaintiff failed to satisfy her burden of proof to establish that defendants' acts or failures to act were the proximate cause of the accident. Both plaintiff and defendants presented proof that the accident occurred when the left wing of the aircraft fell off in flight due to the propagation of a fatigue crack. Defendants urge that the crack was due to the Navy's failure properly to repair damage sustained to the left wing of the aircraft in Vietnam and that this failure was the "intervening" case which "superseded" the acts of defendants.

Whether or not the Navy's acts constituted an "intervening" or "superseding" cause was a question of fact for the jury. Even if the jury found that the Navy's failure to make proper repairs was a cause of the crash, there was sufficient evidence from which the jury could have inferred that the acts of both the Navy and Grumman were substantial contributing factors. For example, the jury could have found that defendants knew or should have known their repair instructions to be inadequate, or the wing to have been repaired improperly, or fatigue problems to have been present in that model of aircraft generally, and yet failed to notify the Navy. Viewing the evidence in the light most favorable to plaintiff, as the court is required to do, there was ample evidence to sustain the finding of liability.

Defendants contend that the jury's verdict of $1,095,150 was grossly excessive and in excess of the amount demanded in the complaint. The *ad damnum* does not limit the amount that the jury may award. *See Farmer v. Arabian American Oil Company*, 285 F.2d 720, 722 n.2 (2d Cir. 1960). Defendants also urge that under the Supreme Court's decision in *Norfolk and Western Railway Co. v. Liepelt*, —— U.S. ——, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), the jury should have been instructed to take income taxes into account in computing damages. That case, however, applies only to claims brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, and is inapplicable in a diversity action. New York law does not consider income

taxes in computing damages. *See, e.g., Cunningham v. Rederiet Vindeggen A/S,* 333 F.2d 308, 313 (2d Cir. 1964).

Defendants' primary contention is that under *Dullard v. Berkeley Associates Company,* 606 F.2d 890 (2d Cir. 1979), the award is a "windfall" rather than "reasonable compensation". In *Dullard,* the Court of Appeals reduced a wrongful death award from $630,000 to $500,000, stating:

> But the principal of $630,000 alone, if invested to yield a 7% income . . . would provide the next of kin with an annual income of $44,000 without exhausting any principal. By contrast, the income provided by decedent at the time of his death in support of his family was approximately $15,704.00 . . . . Given his working life expectancy of 27 years, that would mean total support of approximately $424,008.00, which, if discounted at the same 7% rate to reflect its present value, would amount to approximately $188,250.00.

■ In reaching the decision in *Dullard,* the Court of Appeals emphasized the absence of expert testimony. The court noted that there was no testimony from which the decedent's "future earning potential" could be measured. In the present case, however, plaintiff's expert testified as to what Lieutenant Vasina's future earnings would have been, both in the Navy and in his second career after retirement from the Navy. Plaintiff also testified as to her husband's career plans. Similarly, the *Dullard* case stated that an adjustment for inflation would not be allowed without expert testimony. By contrast, plaintiff's expert testified as to the effect of inflation, concluding that the rate of inflation offset the discount rate.

Instead of countering plaintiff's case on damages with an expert of their own, defendants chose to present their arguments regarding damages through plaintiff's expert on cross-examination. His testimony is sufficient to support the jury's findings.

Finally, defendants ask the court to reconsider its denial of their motion for summary judgment. In particular, they argue that plaintiff had no claim in strict tort liability based on 16 U.S.C. § 457 which governs the availability of wrongful death actions on federally owned land. That statute provides, in relevant part, that:

> In the case of the death of any person by the neglect or wrongful act of another within a . . . place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be.

■ Defendants contend that the state substantive law and decisions which existed at the time state sovereignty was surrendered apply in wrongful death actions governed by Section 457. Since the enclave passed to the federal government in 1846 and the Oregon courts did not adopt strict products liability until 1967, defendants maintain that plaintiff has no claim for relief under a strict products liability theory.

The ordinary meaning of the words used in Section 457 suggests that the purpose of the first sentence was to make the law applicable to wrongful death actions on federal lands consistent with the law applied in the state surrounding the federal lands, while the second sentence was intended to adopt the state law applicable to personal injury actions generally. That makes manifest good sense. It is hardly likely that Congress would choose to have an action involving wrongful death in an aircraft in the 1970's determined by the common law developed in 1846 to deal with accidents involving buggies or perhaps ox-carts.

Neither the legislative history nor any consideration of policy gives support to such an incongruity. *See* 69 Cong.Rec. 1486 (January 14, 1928). Although the primary focus of the discussion on the floor of the

Senate was on making Lord Campbell's Act applicable to places within federal jurisdiction, that was not expressed as the sole purpose. In fact, Senator Walsh explained that the "same" right of action would be available within federal lands as without. *Id.*

The Supreme Court in *Murray v. Joe Gerrick & Co.*, 291 U.S. 315, 54 S.Ct. 432, 78 L.Ed. 821 (1934), recognizing that Section 457 applied only to a "right of action", that is, "actions at law", held that there could be no claim by a widow under a state workmen's compensation law adopted after the cession to the United States of the land on which the death occurred. But the court also held that an action at law could be maintained under "the existing law, as declared from time to time by the state," and that this existing law included post cession statutory law vesting the right to sue in the personal representatives of the decedent. 291 U.S. at 319, 320, 54 S.Ct. at 433, 434.

In *Puleo v. H. E. Moss & Co.*, 159 F.2d 842 (2d Cir.) (per L. Hand), *cert. denied*, 331 U.S. 847, 67 S.Ct. 1733, 91 L.Ed. 1857 (1947), the court, applying Section 457 to admiralty, treated the then current state law as governing. While it was later determined that the section does not apply to admiralty, *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 404, n.16, 90 S.Ct. 1772, 1789, n.16, 26 L.Ed.2d 339 (1970), neither the Supreme Court nor the Second Circuit has since otherwise questioned the decision.

Defendants cite *Quadrini v. Sikorsky Aircraft Division, etc.*, 425 F.Supp. 81 (D.Conn. 1977), in support of their position. In that case the court by way of dictum said that Section 457 in requiring reference to state law for "the rights of the parties" intended that state law be used "only to determine if the action can be brought and who has the right to bring it" and not to determine the surrounding state's "substantive law". The court then said that the common law tort rules in effect at the time of the cession would apply. *Id.* at 88. This court respectfully declines to follow those dicta.