**Rita Jean VASINA, as Executrix of the Estate of William Arthur Vasina, deceased, Plaintiff-Appellee,**

**v.**

**GRUMMAN CORP. and Grumman Aerospace Corp., Defendants-Appellants.**

**No. 417, Docket 80–7638.**

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1980.

Decided March 17, 1981.

---

Marc S. Moller, New York City (Kreindler & Kreindler, Steven Earl Anderson, Robert E. Greshes, New York City, of counsel), for plaintiff-appellee.

Thomas R. Newman, New York City (Siff & Newman, P.C., Maurice L. Noyer, J. K. Weir, Haight, Gardner, Poor & Havens, New York City, of counsel), for defendants-appellants.

Before FEINBERG, Chief Judge, KEARSE, Circuit Judge, and METZNER, District Judge.*

FEINBERG, Chief Judge:

Defendants Grumman Corporation and Grumman Aerospace Corporation (Grumman) appeal from a judgment entered in favor of plaintiff Rita Jean Vasina, in the amount of $1,184,270 plus six per cent interest from the date of death, in the United States District Court for the Eastern District of New York, after a jury trial before Eugene H. Nickerson, J. Plaintiff's suit followed the death of her husband, Navy Lieutenant William Arthur Vasina, in the crash in March 1973 of a Navy airplane designed and manufactured by Grumman. A later Navy investigation concluded that the crash was caused by an in-flight separation of the port wing of the airplane. This wing had been damaged in action in Vietnam in 1967, and had been repaired by Navy field personnel at that time. Plaintiff alleged that Grumman was liable for Lieutenant Vasina's wrongful death, and for survival damages, based on theories of negligence, strict liability, and breach of

warranty. Grumman asserted that the wing separation was actually due to the Navy's failure to properly repair the 1967 damage. For reasons indicated below, we affirm the judgment of the district court.

## I

Grumman's first group of arguments on appeal centers around its claim that the Navy's negligence relieved Grumman of any liability for its own negligence. We note in passing that Grumman does make a desultory claim to us that it was not negligent at all. But that argument deserves little discussion. The trial judge found, 492 F.Supp. 943, 944 (E.D.N.Y.1980), that there was ample evidence indicating that Grumman's negligence contributed substantially to the crash. Our review of the record confirms this finding.

Grumman's weightier argument rests on its assertion that the Navy's faulty repair and maintenance of Lieutenant Vasina's airplane amounted to "unforeseeable intervening and superseding negligence" that served to "cut off" "any possible liability on the part of Grumman." See W. Prosser, The Law of Torts 270–89 (4th ed. 1971). Grumman first argues that the Navy's alleged negligence relieved Grumman of liability as a matter of law. This argument is not persuasive. The case before us is not one where Grumman's liability could be relieved by a showing of any intervening Navy negligence, however slight or irrelevant. Rather, the Navy's negligence would have to be substantial, and decisive in the causal chain of events leading to the crash, in order to eliminate Grumman's liability. In other words, the question presented below was one of proximate cause, and that question is within the province of the jury. See W. Prosser, supra, at 289–90.

Grumman cites Restatement (2d) of Torts § 452(2), Illustration 9, as support for its position.[1] We have found no New York

* United States District Judge for the Southern District of New York, sitting by designation.

1. Illustration 9 provides:
    The A Railroad negligently turns over to its connecting carrier B Railroad a freight car,

case that adopts that specific portion of the Restatement, see 1 New York Pattern Jury Instructions 2:72 at 212–15 (1974 & Cum. Supp.1980) (instruction on intervening causes). Moreover, since results such as that in Illustration 9 have been criticized as "difficult to explain" by Prosser, see W. Prosser, supra, at 289, we feel no compulsion to suppose that the New York Court of Appeals would adopt § 452(2) if the issue were presented to it today. Finally, § 452(2) "covers the exceptional cases in which . . . the duty, and hence the entire responsibility for the situation, has been shifted to a third person." See § 452, Comment d. But the jury in the present case was instructed respecting Grumman's "duty" to Lieutenant Vasina, and by its verdict found that that duty still existed at the time of the crash and had not been fully discharged by Grumman.

Grumman also argues that the trial judge committed reversible error in refusing to give to the jury an instruction requested by the defense on the subject of "intervening" and "superseding" negligence. This argument does possess a surface appeal. There was clearly enough evidence adduced at trial to warrant a jury decision on Grumman's defense theory. But ultimately, Grumman's argument that the judge committed reversible error on this issue is unpersuasive. In evaluating the judge's instructions to the jury, it is helpful to refer to the summations presented by counsel for both litigants immediately before the charge. Those summations identify as the central issue in the case whether the Navy's conduct or Grumman's conduct was the proximate cause of the crash. For example, Vasina's counsel asserted that "if Grumman is partially responsible, it is liable. . . . [I]f the Navy was exclusively responsible, then Grumman can walk." In turn, Grumman's

counsel contended at the start of his argument that "the sole reason why this accident happened is that it was the fault of the Navy and Navy personnel." Vasina had argued that Grumman's negligence in designing the airplane, in overseeing its maintenance and use by the Navy, and in failing to warn the Navy properly of dangers in the airplane once they were discovered, each made Grumman liable for the crash. Grumman replied that the Navy's negligence in repairing and maintaining the airplane poorly and in flying the airplane too long, despite Grumman's cautionary instructions and recommendations, relieved Grumman of all liability.

In the context of these summations, the trial judge's instructions, though brief, were adequate to present to the jury the legal criteria relevant to Grumman's defense of superseding negligence. In describing the burden of proof on plaintiff, the judge defined "proximate cause" as follows: "An act or failure to act is the proximate cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect on producing the injury that reasonable people would regard it as a cause of the injury." He then presented the litigants' conflicting contentions and explained the jury's duty in simple, concise language:

There may be more than one proximate cause of an accident. Grumman has contended that the negligence of the Navy was the sole proximate cause of the crash.

If you find that the Navy's negligence was the sole proximate cause, then plaintiff may not recover. However, if you find that both Grumman and the Navy, by separate and independent acts of negligence proximately caused or were sub-

the door of which is in defective and dangerous condition. B Railroad operates the car on its own line over a period of six months, during which time it negligently fails to inspect the car and discover the defect. At the end of that time it turns the car over to C Railroad. D, who is an employee of C Railroad, without any negligence of his own, is

injured when the door falls on him. A Railroad is not liable to D.

Grumman places itself in the position of A Railroad, the Navy in the position of B Railroad, Lieutenant Vasina's squadron in the position of C Railroad, and Lieutenant Vasina himself in the position of D.

stantial factors in proximately causing the death of Lieutenant Vasina, then Grumman is responsible for the whole injury even though Grumman alone might not have been solely responsible for the death of Lieutenant Vasina and even though its acts are not equal in degree to the negligence of the Navy.

In other words, from the standpoint of proximate cause, it is no defense to Grumman merely that the negligence of the Navy contributed to the death of Lieutenant Vasina.

These instructions were correct, because if the Navy's asserted intervening negligence had been "superseding," relieving Grumman of responsibility, then the Navy's negligence would indeed have been the "sole *proximate* cause" of the crash. In other words, the issue of "intervening" and "superseding" negligence was contained in the issue of proximate cause, and was adequately presented to the jury in the latter form.

Grumman argues that the trial judge should have given its requested instructions instead of those actually given. We are unpersuaded. Grumman's requested instructions were much longer and more complex, and might well have been unintelligible or needlessly confusing to the jury.[2] The trial judge endeavored, we think suc-

cessfully, to instruct the jury in ordinary, easily understandable language. In pursuit of this goal, he acted within his discretion in rejecting Grumman's formulations in favor of his own, which we believe gave the jury sufficient guidance on the applicable law.

## II

■ Grumman also claims that the trial judge erred in submitting to the jury a claim for strict tort liability, premised upon a defect in the design of Lieutenant Vasina's airplane. The crash occurred within a federal enclave, the Boardman Bombing Range in Oregon. Grumman argues that the law applicable to this case is therefore determined by reference to 16 U.S.C. § 457, which provides that

> In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State

---

2. For example, Grumman's Requested Charge Number 17:

The failure to guard against the remote possibility of an accident, or one which, in the exercise of ordinary care, could not be foreseen, does not render the actor liable in negligence. Reasonable foresight is required, not prophetic vision. In other words, the person charged with negligence is not required to foretell the future. Where the result is one that could not have been reasonably anticipated from the original negligent act, then it cannot be said that such act was a proximate cause of the injury. Even though the injury sustained would not have occurred had not the original negligent act been committed, where the injury could not have been foreseen or reasonably anticipated as a probable result or a natural consequence of the negligence complained of, it is not actionable.

In making your determination whether an intervening force is a superseding cause of the accident, you should consider whether:

(a) the intervening force brought about harm different in kind from that which would otherwise have resulted;

(b) the intervening cause is operating independently of any situation created by the defendant's conduct, or, on the other hand, is a normal result of such a situation;

(c) whether the intervening force is due to a third person's act or his failure to act;

(d) whether the intervening force is due to a wrongful act by a third person, and as such subjects the third person to liability; and

(e) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion. *See* Restatement (Second) of Torts § 442. *See also Warren's Negligence*, Vol. 1A at 256.

This was but one of twenty-six requested instructions submitted by Grumman—three on the subject of intervening and superseding cause alone.

within the exterior boundaries of which it may be.

Grumman interprets this statute to mean that the law applicable to the present case is the law in force in Oregon at the time that the enclave was ceded to the United States. The trial judge found that this cession occurred in 1846. 492 F.Supp. at 945. Grumman argues that since Oregon did not permit tort recoveries based on strict liability until 1967, the law in force within the federal enclave in 1973, the year of the crash, did not permit strict-liability tort recoveries. Therefore, Grumman concludes, the trial judge committed reversible error when he submitted the strict-liability claim to the jury.[3]

We agree with Grumman that the law applicable to this case is determined by reference to 16 U.S.C. § 457. But we do not agree that § 457 requires that the law of federal enclaves regarding wrongful-death actions be frozen as of the date of cession. The natural reading of the statutory language is that the wrongful-death law of a federal enclave should be identical to that of the surrounding state, whatever that law might be and however it might change over time. The legislative history of § 457 supports such a reading. Senator Walsh of Montana, in explaining the provision to Senator Robinson of Arkansas, stated that the statute would operate "so that if under the law of Arkansas a right of recovery could be had if the death occurred outside of the [enclave], the same right of action would exist if it occurred in the [enclave]." 69 Cong.Rec. 1486 (1928). Thus, it was contemplated that the law of a federal enclave would be "the same" in this respect as that of the surrounding state. This intention was recognized by the Supreme Court in *Stewart & Company v. Sadrakula*, 309 U.S. 94, 100 & n.9, 60 S.Ct. 431, 434, n.9, 84 L.Ed. 596 (1940):

> The Congress has recognized in certain instances the desirability of ... similarity between the municipal laws of the

state and those of the federal parcel. Since only the law in effect at the time of the transfer of jurisdiction continues in force, future statutes of the state are not a part of the body of laws in the ceded area. *Congressional action is necessary to keep it current.* Consequently as defects become apparent legislation is enacted covering certain phases. *This occurred as to rights of action for accidental death by negligence or wrongful act* [citing 45 Stat. 54, 16 U.S.C. § 457 (1928)]. (Emphasis added.)

The same construction of § 457 is implicit in numerous opinions of lower courts. See, e. g., *Greene v. Vantage Steamship Corporation*, 466 F.2d 159, 166 n.9 (4th Cir. 1972) (implicitly interpreting § 457 to apply current state law); *Mathis v. General Electric Corporation*, 580 F.2d 192, 194 (5th Cir. 1978) (same); *Muniz v. United States*, 280 F.Supp. 542, 546 (S.D.N.Y.1968) (same). Finally, under Grumman's interpretation of § 457, federal enclaves would become pockets of outdated legislation. Cf. *Capetola v. Barclay-White Company*, 48 F.Supp. 797, 800 (E.D.Pa.). ("Ceded property would ... become a sanctuary for the obsolete restrictions of the common law and a grave yard for the burial of every humane legislation ...."), *aff'd*, 139 F.2d 556 (3d Cir. 1943), *cert. denied*, 321 U.S. 799, 64 S.Ct. 939, 88 L.Ed.1087 (1944). We do not think that such an intention can be plausibly ascribed to the Congress that enacted § 457.

In support of its position, Grumman relies heavily on *Quadrini v. Sikorsky Aircraft Division*, 425 F.Supp. 81 (D.Conn. 1977). That case involved the crash of a military helicopter in a federal enclave in North Carolina. The district judge concluded that the substantive law applicable to plaintiff's tort claim was "the tort law of North Carolina as it existed on April 3, 1941, the time the enclave was ceded to the United States ...." Id. at 88. We decline to make *Quadrini* the law of this circuit on this point. If the authors of § 457 had had

---

**3.** Grumman asserts that the date of cession was 1941. The difference is not explained by Grumman, but is immaterial, since Oregon did not permit tort recoveries based on strict liability until long after 1941.

only the narrow purpose ascribed to them in *Quadrini*, we think that they would have drawn the statute itself more narrowly. The plain language of the provision as drafted, and its later judicial construction, lead us to conclude that § 457 envisions the application of the current substantive law of the surrounding state in actions for death or personal injury occurring within a federal enclave. Because our holding agrees with that of the district judge below, we find no error in his decision to submit to the jury the strict-liability claim made by plaintiff.[4]

### III

■ Finally, Grumman attacks the jury's damage award in a number of aspects. Grumman claims that the trial judge erred in refusing to permit evidence on the effect of taxes upon the computation of Lieutenant Vasina's lost future income, or to instruct the jury, as requested, regarding the non-taxability of an award for damages made to plaintiff. Grumman's argument on this point rests upon the recent Supreme Court decision in *Norfolk & Western Railway Company v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), in which it was held error to refuse to allow evidence or give requested instructions on taxes in a case brought under the Federal Employers' Liability Act. Grumman contends that *Liepelt* represents the "better view" today,

and "that the New York Court of Appeals, were it presented with this question today, might well be persuaded that instructions on these issues should be furnished to the jury." In support of its view, Grumman cites *Coleman v. New York City Transit Authority*, 37 N.Y.2d 137, 145, 371 N.Y.S.2d 663, 332 N.E.2d 850 (1975) (Jasen, J., dissenting).[5] We see no support in *Coleman* for Grumman's position. Judge Jasen's dissent in that case, in which he argued for jury instructions on taxes, hardly suggests that the New York Court of Appeals would embrace *Liepelt* today. On the contrary, the fact that all six of Judge Jasen's colleagues opposed him on this point leads us to believe that the majority opinion in *Coleman* still expresses the majority view of the New York Court of Appeals on this subject. Our review of New York case law on this point since *Coleman* confirms that belief. We have found no indication that the New York Court of Appeals, or any lower court, has expressed any doubts about the majority view in *Coleman*. We therefore conclude that Grumman's assignment of error here is without support in New York law.

■ Grumman also argues that prejudgment interest should not have been awarded. Grumman's argument here is that Oregon law, which does not provide for prejudgment interest, should apply to the present case by virtue of 16 U.S.C. § 457.

---

4. *Murray v. Joe Gerrick & Company*, 291 U.S. 315, 54 S.Ct. 432, 78 L.Ed. 821 (1934), and *Arlington Hotel Company v. Fant*, 278 U.S. 439, 278 U.S. 439, 73 L.Ed. 447 (1929), both of which are cited in *Quadrini*, are not to the contrary. *Fant*, which did not even refer to § 457, involved state changes of law enacted before § 457 itself was enacted in 1928, and is therefore not on point. *Murray* held that § 457 applies "only to actions at law," 291 U.S. at 318, 54 S.Ct. at 433, and not to claims brought under state workmen's compensation laws, and is likewise not on point. It should be noted, however, that *Murray* also held that § 457 had the effect of incorporating state changes of law enacted between the date of cession and the enactment of § 457. In so holding, the Court interpreted the statutory language, "the laws of the State within the exterior boundaries of which [the federal enclave] may be." It observed that, "This plainly means the existing law, *as declared from time to time by the state*

. . . ." 291 U.S. at 319, 54 S.Ct. at 433 (emphasis added).

5. Grumman stated at trial that it was "happy" with the application of New York law rather than Oregon law "as to the measure of damages." Appellee suggests that one of the reasons for Grumman's position in the trial court may have been that "[w]rongful death compensatory damages recoverable under Oregon law are more liberal than under New York law . . . ."

Grumman also cites *Gilliard v. New York City Health and Hospitals Corporation*, 77 A.D.2d 532, 430 N.Y.S.2d 308 (1st Dep't 1980), for this point. But that case does not address the question of instructing juries at all. The *Gilliard* court merely mentioned income taxes as one of many factors it considered in concluding that a damages award of $200,000 was plainly excessive, see id. at 533.

But Grumman explicitly accepted the application of New York law respecting damages, see note 4 supra. And as Grumman concedes in its brief on appeal, New York law "specifically provides for prejudgment interest." Grumman seems to want to pick and choose between the laws of Oregon and New York to suit its own advantage. We reject this "smorgasbord" approach.

Grumman's last claim is that the amount of the judgment in favor of plaintiff is "grossly excessive compensation for plaintiff's pecuniary loss." The amount in question is $1,095,150.[6] Grummàn's argument is that by investing the award in "municipal bonds yielding more than 10% per year," plaintiff will be able to receive as annual income an amount far greater than Lieutenant Vasina's income at the time of his death. Grumman therefore urges that the judgment be set aside, citing *Dullard v. Berkeley Associates Company*, 606 F.2d 890, 895 (2d Cir. 1979). We think that *Dullard* is readily distinguishable from the present case and that Grumman's argument is without substantial merit.

Grumman's simplistic comparison of current bond yields with Lieutenant Vasina's 1973 income ignores the complexity of this (and almost every) damage-award calculation. At trial, only plaintiff presented expert testimony on plaintiff's pecuniary loss; Grumman contented itself with cross-examination of plaintiff's expert. Plaintiff's expert presented calculations—clearly accepted by the jury—that conclusively rebut Grumman's argument on appeal. Plaintiff's calculations of pecuniary loss included an estimate of Lieutenant Vasina's lost wages from the date of death to the time of trial; an estimate of his lost wages from the time of trial to the end of his military career, which estimate assumed predictable and reasonable future pay increases; an estimate of Lieutenant Vasina's lost future pension, which was guaranteed and of a

readily predictable amount; and an estimate of the income he would have been able to earn in a second career begun after retirement from the Navy. All of these individual estimates were reasonable, and their total closely approximated the amount ultimately awarded by the jury.

Grumman's reliance on *Dullard* is unavailing. *Dullard's* calculations of future income did not allow for future pay increases, for a future pension, or for future second-career income. In the context of that case, where no expert testimony respecting such factors was offered, it was reasonable to ignore them and to make a direct comparison between bond yields and decedent's lost annual income. But in the present case, the damage award comprised a number of future income factors, each of which was calculated in a reasonable manner. The sum of these individual factors cannot be dismissed as unreasonable by reference to a *Dullard*-style comparison of 1980 bond yields and Lieutenant Vasina's 1973 income. We therefore conclude that the damage award was not unreasonable.

Grumman presents a number of other claims of reversible error committed by the trial judge, but we find none of these sufficiently meritorious to warrant discussion. In sum, we think that none of the errors complained of by Grumman requires reversal of the judgment of the district court, which we therefore affirm.

KEARSE, Circuit Judge (dissenting):

With all due respect, I dissent from the majority's view that the trial court's instructions were sufficient to present to the jury the defense of intervening cause.

The major defense presented by defendants Grumman Corporation and Grumman Aerospace Corporation (collectively "Grumman") was that the duty of care with respect to the airplane that crashed, causing

---

**6.** This is the amount awarded to plaintiff and her daughter by reason of her husband's death. The balance of the award, $89,120, was given to decedent's daughter "for loss of fatherly nurture, care and guidance." As to prejudgment interest on the award, that may not be considered in determining excessiveness, see *Dullard v. Berkeley Associates Company*, 606 F.2d 890, 895 (2d Cir. 1979), citing *Zaninovich v. American Airlines, Inc.*, 26 A.D.2d 155, 160, 271 N.Y.S.2d 866 (1st Dep't 1966).

the death of plaintiff's decedent, had shifted from Grumman to the Navy. The defense was based on the evidence that the airplane, sold by Grumman to the Navy in 1966, had suffered wing damage in 1967 as the result of a malfunction of a bomb ejector rack, not manufactured by Grumman, that had been added to the plane by the Navy; shortly thereafter the damaged wing was given a temporary repair of "extremely poor quality" by the Navy, and, notwithstanding naval procedures and Grumman's repair manual instructions to the contrary, the Navy proceeded to use the airplane without more permanent repairs for more than five years. Grumman contends that the Navy was negligent and that its negligence was an intervening and superseding cause of the crash in 1973.

Grumman's theory is soundly based in New York law, under which "liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence." *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980); *see Mull v. Ford Motor Co.*, 368 F.2d 713, 717 (2d Cir. 1966); *Ventricelli v. Kinney System Rent A Car, Inc.*, 45 N.Y.2d 950, 952, 411 N.Y.S.2d 555, 383 N.E.2d 1149 (1978); *Sheehan v. City of New York*, 40 N.Y.2d 496, 503, 387 N.Y.S.2d 92, 354 N.E.2d 832 (1976). The jury thus should have been instructed to consider whether the Navy's negligence was foreseeable to Grumman:

> If the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act which breaks the causal nexus (see e. g., *Martinez v. Lazaroff*, 48 N.Y.2d 819, 820, 424 N.Y.S.2d 126, 399

N.E.2d 1148; *Ventricelli v. Kinney System Rent A Car*, 45 N.Y.2d 950, 952, 411 N.Y.S.2d 555, 383 N.E.2d 1149 *supra; Rivera v. City of New York*, 11 N.Y.2d 856, 227 N.Y.S.2d 676, 182 N.E.2d 284). Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve.

*Derdiarian v. Felix Contracting Corp., supra*, 51 N.Y.2d at 315, 434 N.Y.S.2d 166, 414 N.E.2d 666. To allow the jury to consider the theory with comprehension, the charge should have been complete, accurate, and easily understandable to the lay person. *See, e. g.,* 1 New York Pattern Jury Instructions 1–2 (1974). The recommended New York charge with respect to intervening causes is as follows:

> If you find that defendant was negligent but that plaintiff's injuries were caused by the act of a third person, defendant may be held liable for such injuries if you further find that a reasonably prudent person, situated as the defendant was prior to the happening of the incident, would have foreseen an act of the kind committed by the third person as a probable consequence of the defendant's negligence. If your finding is that a reasonably prudent person would not have foreseen an act of the kind committed by the third person as a probable consequence of defendant's negligence, then defendant is not responsible for plaintiff's injuries and your verdict must be for defendant.

*Id.* at 212 (as modified in 1980 Supp.).[1]

The majority recognizes that "[t]here was clearly enough evidence adduced at trial to warrant a jury decision on Grumman's de-

---

1. Among the authorities relied on in the commentary on this recommended jury instruction is Restatement (Second) of Torts § 452 (1965), which reads as follows:

(1) Except as stated in Subsection (2), the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a superseding cause of such harm.

(2) Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause.

fense theory." (Majority Opinion at 115, *ante*.) It holds that because the parties' lawyers had argued intervening cause in their summations, the judge's charge on proximate cause was sufficient to instruct the jury to consider intervening or superseding cause. I do not agree. Needless to say, the judge began his charge by instructing the jury that it was their duty to follow the law as it was stated by *him*. The charge that followed did not once mention that the jury might consider whether the Navy's negligence had been so independent or unforeseeable in the normal course of events as to have broken the causal chain between Grumman and the fatal accident.

The portion of the charge relied on by the majority, to the extent that it is not directed toward the concept of *joint* causation ("There may be more than one proximate cause of an accident"), was completely unenlightening on intervening cause or foreseeability. It stated only that

> Grumman has contended that the negligence of the Navy was the sole proximate cause of the crash.

> If you find that the Navy's negligence was the sole proximate cause, then plaintiff may not recover.

The charge gave no indication whatever of the basis on which the jury might find that Grumman's negligence was not a proximate cause of the accident—*i. e.*, the remoteness and unforeseeability of the Navy's negligence.

Indeed, the charge as a whole may have led the jury to believe that Grumman would be liable despite unforeseeability. The only instruction mentioning foreseeability was as follows:

> In determining whether the defendant was negligent, you must consider whether it was foreseeable that the defendant's acts or omissions created a risk of the kind of injury which occurred. A person is responsible for the consequences of his conduct if the risk of such an injury was reasonably foreseeable. It is not necessary that the defendant should have had notice of the particular condition from which the injury would occur, or the pre-

cise injury that would result, if the possibility of the kind of accident which occurred would have been clear to the ordinarily prudent person.

This does not mention the foreseeability of the Navy's negligence or of any act of the Navy; rather, each of the three sentences focuses on the foreseeability of the *kind of injury*, undoubtedly directing the jury's thoughts to the fatal crash, rather than to the negligent repairs that preceded it. If the jury deduced from this portion of the charge that it was to give any thought at all to the Navy's negligent repairs, it would be less likely to equate the Navy's negligence with the "kind of injury" than with the "condition" that led to the injury. And as to the latter, the jury plainly was instructed that "[i]t is *not* necessary that the defendant should have had notice of the particular condition from which the injury would occur ...." (Emphasis added.) Thus, to the extent that the jury may have thought that foreseeability bore on the question of the Navy's negligence in relationship to Grumman's negligence as a proximate cause, it is more likely to have believed that the Navy's negligence did *not* have to be foreseeable in order for Grumman to be found liable.

In short, the charge was not a complete statement of the applicable law, and I cannot believe the lay jury had any notion that it was to consider whether the Navy's negligent repair was so "far removed from" Grumman's conduct that it "[broke] the causal nexus." *Derdiarian v. Felix Contracting Corp., supra*, 51 N.Y.2d at 315, 434 N.Y.S.2d 166, 414 N.E.2d 666. The majority's ruling means that despite the presentation of ample evidence upon which a jury could find that the plaintiff's injury was caused by a third person's act, independent of or far removed from the defendant's negligence, the trial court need never mention to the jury the principle that if an act of the sort that intervened was not foreseeable the defendant should not be found liable. The practical result is to read intervening or superseding cause out of the law of New York.

I would reverse and remand for a new trial.[2]

---

**2.** I have no quarrel with so much of part II of the majority's opinion as holds that it was proper to submit to the jury the theory of strict tort liability. Nonetheless, because we do not know the basis of the jury's verdict, the inade-quacy of the instructions on the negligence claim requires a retrial.