**USX CORPORATION and Tristate Employers Association, Plaintiffs,**

v.

**PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY; James W. Knepper, Jr., Secretary of Pennsylvania Department of Labor and Industry; Pennsylvania Office of Employment Security; Earl H. Brown, Deputy Secretary for Employment Security; and R. Budd Dwyer, Treasurer, Commonwealth of Pennsylvania, Defendants.**

Civ. A. No. 86–1320.

United States District Court,
M.D. Pennsylvania.

Oct. 1, 1986.

Peter D. Post, Reed, Smith, Shaw and McClay, Pittsburgh, Pa., for plaintiffs.

Jason S. Shapiro, Harrisburg, Pa., for Pa. Chamber of Commerce, amicus curiae.

Duane, Morris & Heckscher, Arthur K. Hoffman, Harrisburg, Pa., for Pa. Mfrs. Ass'n.

Gregory Neuhauser, Deputy Atty. Gen. Office, Harrisburg, Pa., for all defendants except R. Budd Dwyer.

Vincent X. Yakowicz, Harrisburg, Pa., for Budd Dwyer.

Michael H. Gottesman and Gary L. Sasso, Bredhoff & Kaiser, Washington, D.C., for AFL–CIO–CLC, intervenors.

Eliot A. Strokoff, Handler, Gerber, Johnston, Strokoff & Cowden, Harrisburg, Pa., for AFL–CIO–CLC, intervene.

MEMORANDUM

CALDWELL, District Judge.

## I. *Introduction.*

Plaintiffs, USX Corporation (USX) and Tristate Employers Association, have filed a complaint, accompanied by a motion for preliminary injunction, seeking to enjoin the payment of unemployment compensation to USX's Pennsylvania employees following a work stoppage at USX's steel plants located in the state. The action was brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and 42 U.S.C. § 1983. Plaintiffs invoke our federal question jurisdiction pursuant to 28 U.S.C. § 1331. Essentially, they argue that portions of the Pennsylvania unemployment compensation law violate the due process clause of the fourteenth amendment because unemployment compensation may be paid to the workers before a judicial determination of its propriety, and the compensation may not be recoupable. Defendants are the Pennsylvania Department of Labor and Industry, James W. Knepper Jr., Secretary of Labor and Industry, the Pennsylvania Office of Employment Security, Earl H. Brown, Deputy Secretary for Employment Security, and R. Budd Dwyer, Treasurer of the Commonwealth of Pennsylvania.[1] A hearing was held on the motion for injunctive relief, the parties have briefed the issues, and the motion is accordingly ripe for disposition.[2]

## II. *Factual Background.*

From the complaint, and hearing testimony, the background of this litigation can be fairly characterized as follows. USX operates a number of steel producing facilities throughout Pennsylvania by way of its USS Division. The collective bargaining agreement between USX and the United Steelworkers of America (Union), representing USX's steelworker employees, expired on July 31, 1986 with extensive, but fruitless, negotiations occurring up to that time for a renewal of the agreement. On August 1, 1986, a work stoppage began at the Pennsylvania plants. USX contends that the work stoppage is a strike which disqualifies the workers from receiving unemployment compensation.[3] The Union has taken the position that the work stoppage is a lock out.

---

1. The parties have agreed that the treasurer may be dismissed from this action and the order accompanying this memorandum will do so.

2. After suit was filed, the Pennsylvania Manufacturers Association and the Pennsylvania Chamber of Commerce moved to file *amicus curiae* briefs. Additionally, J. Harris, Floyd Albin, Leo Alfonsi, James Stewart, USX employees currently not working because of the labor dispute, and the United Steelworkers of America,

AFL–CIO–CLC, moved to intervene as defendants. None of these motions were opposed and they will be granted.

3. Under Pennsylvania law, striking workers are not eligible for unemployment compensation, see 43 P.S. § 802(d) (Purdon 1964), but those who have been locked out are eligible, *id.,* as long as they are not ineligible based on other factors. 43 P.S. § 802(e).

The approximately 6,200 members of the Union employed by USX began applying for unemployment compensation shortly before or after July 31, 1986, depending upon when their employment was suspended. Both sides made presentations to the Office of Employment Security (OES) concerning the nature of the work stoppage. USX was not given an opportunity to cross-examine those presenting evidence on behalf of the workers. On August 21, 1986, OES issued two "Notices of Determinations", concluding that the work stoppage was a lock out and that the workers were entitled to unemployment compensation.[4] USX has appealed that determination to the Unemployment Compensation Board of Review (Board) and the hearings, before a referee, have been scheduled for October 15, 16, 17, 1986. If the referee affirms the decision of OES, USX may appeal to the Board itself, and subsequently to the Pennsylvania Commonwealth Court. In the meantime, workers have begun receiving unemployment compensation. Plaintiffs estimate that eligibility will be exhausted within twenty-six weeks, and payment of benefits of approximately thirty million dollars would have been made before USX can obtain judicial review of the agency's decision concerning the nature of the work stoppage.

### III. *Discussion.*

### A. *The Court Has Jurisdiction to Grant Injunctive Relief and Abstention Is Inappropriate.*

Before disposing of the merits of plaintiffs' motion, we will deal with arguments raised by the defendants concerning our power to enter injunctive relief.

### 1. *The Tax Injunction Act Is Not a Total Bar to this Action.*

■ The defendants argue that we have no jurisdiction to enter injunctive relief be-

cause of the Tax Injunction Act. That statute provides as follows:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341.

The defendants contend that the statute is designed to protect state tax administration from interference by federal courts. Since the unemployment compensation law is a state tax measure, and USX has a plain, speedy and efficient remedy in state court, the Act applies and prohibits injunctive relief.

Plaintiffs take issue with the contention that Pennsylvania's remedy is "plain, speedy and efficient" since the crux of their due process claim is that under the statute, unrecoupable payments may have been made to claimants before they can obtain judicial review of the Department's decision. We need not reach this issue, however, because plaintiffs are correct when they argue that their suit, at least in part, is not one to enjoin the collection of a tax.

As we understand the complaint, plaintiffs claim a due process violation arising from the statutory authorization to pay unemployment compensation upon an initial determination of eligibility but before judicial review of the propriety of the administrative action. Further, the statutory scheme has no adequate means of recouping these payments if they are paid in error, so that plaintiffs' property rights may be implicated in their subsequent contributions to the unemployment compensation fund. To avoid this result they seek to prohibit payment of benefits as one way of meeting their constitutional objections to the state statute. We do not perceive this challenge as an attempt to interfere with the collection of the unemployment tax or

---

**4.** Two notices were issued because OES considered representative applicants from two groups of workers: (1) those who lost employment prior to the expiration of the collective bargaining agreement because USX was shutting down the plants and (2) those who stopped working after the agreement expired.

its administration, *see generally, Harvey & Harvey, Inc. v. Delaware Solid Waste Authority,* 600 F.Supp. 1369 (D.Del.1985).[5]

### 2. *The Norris-LaGuardia Act Does Not Bar Injunctive Relief.*

■ The Union and the steelworker defendants argue that jurisdiction is divested by the Norris-LaGuardia Act which, provides, in pertinent part, as follows:

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

. . . .

(c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;

29 U.S.C. § 104(c).

The defendants argue that the Commonwealth of Pennsylvania is a "person" "interested in a labor dispute" and that this case obviously grows out of a labor dispute. Accordingly, plaintiff's request that unemployment compensation benefits be denied the workers cannot be granted since the court lacks jurisdiction to do so.

The defendants have commendably brought to the court's attention authority which would indicate that the Norris-La-Guardia Act is inapplicable here, *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Almacs, Inc. v. Hackett,* 312 F.Supp. 964 (D.R.I.1970), although they argue against its merit. Plaintiffs have also relied on this authority and have argued from it that the Commonwealth is not a "person" within the meaning of the Act and can be enjoined in the proper circumstances.

We have carefully considered plaintiffs' attempt at distinguishing *United Mine Workers* by pointing to the status of the United States in that case as an employer, which is not true of the Commonwealth in the instant case. We recognize that the government's employer status was important to the Court's conclusion that the United States was not barred by the Act from seeking injunctive relief. But an equally valid ground for the Court's conclusion was that "person" as defined in the Act does not include sovereigns. As stated by the Court:

The Act does not define "persons." In common usage that term does not include the sovereign, and statutes employing it will ordinarily not be construed to do so. Congress made express provision, R.S. § 1, 1 U.S.C. § 1, for the term to extend to partnerships and corporations, and in § 13 of the Act itself for it to extend to associations. The absence of any comparable provision extending the term to sovereign governments implies that Congress did not desire the term to extend to them.

*Id.* at 275, 67 S.Ct. at 687, 91 L.Ed. at 903 (footnote omitted). Accordingly, the Act does not prohibit us from granting injunctive relief against a state government. *See Almacs, Inc., supra,* (following *United Mine Workers*).

### 3. *Abstention Is Inappropriate In this Case.*

The Union and steelworker defendants have also argued that we should abstain from this controversy, relying upon a line of cases originating with *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Defendants argue that abstention is appropriate here because plaintiffs are requesting that we interfere with a state administrative process in which the Commonwealth has a compelling state interest—provision of unemployment compensation to citizens who are out of work. The plaintiffs are free to assert their feder-

---

5. To the extent that plaintiffs seek injunctive or declaratory relief against the state for changes in plaintiffs' rate of contribution to the unem-

ployment compensation fund, however, we do view the Tax Injunction Act as divesting us of jurisdiction to grant that relief.

al claims in the state proceedings, and to seek review in the state court system if necessary.

Plaintiffs counter that they are not interfering with the pending state administrative proceedings. Those may go forward. Rather, they are litigating here a claim that the state law violates their federal right to due process by paying benefits that cannot be recovered, and which are chargeable to USX or other employers within the state, before judicial review is obtainable. There are no "extraordinary circumstances" requiring abstention.

Most significantly, plaintiffs also point out that the Commonwealth defendants have not raised the abstention issue. In *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977), the Supreme Court held that it need not abstain from adjudicating an appeal under *Younger* when the State of Ohio, although raising that issue unsuccessfully in the district court, did not press it on appeal. Responding to the abstention argument made by an amicus, Republic Steel Corporation, the Court stated:

> *Younger* and these cited cases express equitable principles of comity and federalism. They are designed to allow the State an opportunity to "set its own house in order" when the federal issue is already before a state tribunal.
>
> It may not be argued, however, that a federal court is compelled to abstain in every such situation. If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system. In the present case, Ohio either believes that the District Court was correct in its analysis of abstention or, faced with the prospect of lengthy administrative appeals followed by equally protracted state judicial proceedings, now has concluded to submit the constitutional issue to this Court for immediate resolution. In either event, under these circumstances Younger principles of equity and comi-

ty do not require this Court to refuse Ohio the immediate adjudication it seeks. *Id.* at 479–80, 97 S.Ct. at 1904, 52 L.Ed.2d at 521–22 (footnote omitted).

Similarly, since Pennsylvania has also apparently decided to submit the issues raised by plaintiffs for resolution by this court, we need not concern ourselves with *Younger* principles. We conclude that abstention is therefore inappropriate. *See also Professional Plan Examiners v. LeFante,* 750 F.2d 282 (3d Cir.1984).

Even if we were to consider the abstention argument on the merits our conclusion would be the same. We will first note that the Third Circuit Court of Appeals has taken the following approach to abstention:

> Abstention from the exercise of federal jurisdiction is, in all its forms, "the exception, not the rule." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813 [96 S.Ct. 1236, 1244, 47 L.Ed.2d 483] (1976). It is an extraordinary and narrow exception to the district court's duty to adjudicate a controversy properly before it, justified only in the exceptional circumstances where resort to state proceedings clearly serves an important countervailing interest. *Id.*
>
> In reviewing abstention decisions, appellate courts apply the various criteria for abstention articulated by the Supreme Court in much the same way they would apply provisions of a statute. A.J. Moore, *Federal Practice* ¶ 0.203(1) at 2106 (1985). A district court has little or no discretion to abstain in a case that does not meet traditional abstention requirements. *C–Y Development Co. v. City of Redlands,* 703 F.2d 375, 377 (9th Cir.1983).

*United Services Automobile Ass'n v. USAA Casualty Insur. Co.,* 792 F.2d 356, 360–61 (3d Cir.1986).

And, specifically, " '[i]n the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of

those state proceedings.' *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 30 ( [6th Cir.] 1984)." *Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Comm'n*, 791 F.2d 1111, 1117 (3d Cir.1986) (brackets added). Plaintiffs here are not in the category identified and "simply desire to litigate what is admittedly a federal question in federal court." *Id.* We agree with plaintiffs that these do not present "exceptional circumstances" requiring us to abstain.

**B.** *Plaintiffs Are Not Entitled to Injunctive Relief.*

The Third Circuit Court of Appeals applies the following standard for granting injunctive relief:

> The moving party must show:
>
> (1) a reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured *pendente lite* if relief is not granted. Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court "should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."

*Professional Plan Examiners, supra,* at 288 (quoting *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1143 (3d Cir.1982)).

We will examine the last three of these factors in turn.

**1.** *Plaintiffs Have Not Shown They Will Suffer Irreparable Injury.*

█ We will assume for the purposes of this motion that plaintiffs have shown a likelihood of success on the merits and that they will be able to show that the unemployment compensation law violates due process because it permits plaintiffs' property to be taken irrevocably when a court may ultimately decide that payments were improper.[6] We do not believe, however, that the cases relied upon by plaintiffs, *Pennsylvania Chamber of Commerce v. Torquato*, 386 Pa. 306, 125 A.2d 755 (1956) and *Sun Oil Co. v. Pennsylvania Department of Labor and Industry*, No. 1087 C.D.1973 (Pa.Commw. Aug 16, 1973), (following *Torquato*) are persuasive authority that irreparable injury will occur if we do not enjoin payment of unemployment compensation.

At the outset, we note that we are not bound by *Torquato*. Although it interpreted the federal constitutional guarantee of due process, it is, of course, a state court decision. However, we are not bound by a state court decision on interpreting federal law, as we would be if we were sitting in diversity and construing state law. *See Quadrini v. Sikorsky Aircraft Division*, 425 F.Supp. 81 (D.C.Conn.1977). We disagree with the conclusion of the court in *Torquato* that an injunction was necessary to preserve the employer's rights. In *Torquato*, the court was faced with a situation similar to the case at bar. After a work stoppage the state decided a lock out had occurred, entitling the employees to unemployment compensation. Statutory provisions then in effect would have led to complete disbursement of the eligible funds before review could be obtained in the appellate court. The Pennsylvania Supreme Court presumed irreparable injury from this fact alone but it also noted that the employer's reserve account would be depleted.

---

**6.** The law may accomplish this result because 43 P.S. § 874(b)(1) provides, in pertinent part, that in the absence of fraud, there shall be no recoupment of overpayment when the reversal of award of benefits came after two decisions of eligibility. Further, recoupment is allowed only within the benefit year or the next three year period following the benefit year from future payments, and only at the maximum rate of ⅓ of each future benefit payment if payments exceeded $100. The plaintiffs contend that the net effect of these provisions is to prevent recoupment of any significant amount of benefit payments if they should succeed on judicial appeal. Plaintiffs will then be responsible for making up the loss to the unemployment compensation fund by the "state adjustment factor" which determines, in part, the amount of money each employer in the Commonwealth must contribute to the fund. 43 P.S. § 781.1.

Generally, we would agree that a violation of a constitutional right would result in a presumption of irreparable injury, *see* *International Association of Firefighters v. City of Sylacauga*, 436 F.Supp. 482 (N.D.Ala.1977), but here the violation of due process may only have a monetary impact upon plaintiffs. This impact can be averted by a measure other than denying unemployment compensation to the workers. As suggested by the Commonwealth defendants, if USX ultimately prevails, an order prohibiting the Commonwealth from adjusting USX's or other employers' payments into the unemployment compensation fund, based upon USX's experience with this work stoppage, would be sufficient to preserve the plaintiffs' property interests. This option was not considered by the court in *Torquato* and, apparently, not raised by the litigants there.[7]

A failure on this requisite showing alone is sufficient to deny the request for injunctive relief but we will move on to the remaining criteria. We note that the court in *Torquato* did not consider these factors, instead granting the injunction by relying upon a long line of Pennsylvania cases which granted such relief solely on the basis of irreparable injury. As we have noted above, as a federal court we must consider other factors when appropriate to do so.

### 2. *The Possibility of Harm to Other Interested Persons and the Public Interest.*

■ The defendants assert that the possibility of harm to the approximately 6,200 employees of USX who need unemployment compensation, and the public interest that they receive such benefits, dictate denial of injunctive relief. Both defendants point to 43 P.S. § 752, which contains a declaration, in pertinent part, as to the purpose of the unemployment compensation law as follows:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own.

Consistent with this language, the Third Circuit Court of Appeals has noted "the significance of the private interest at stake in claims for unemployment compensation." *Wilkinson v. Abrams*, 627 F.2d 650, 665–66 (3d Cir.1980). The court further noted in *Wilkinson* as follows;

The importance of unemployment compensation benefits has been recognized by the Department of Labor:

... [U]nemployment insurance is designed to prevent the destitution [occasioned by unemployment] by immediately providing a cash payment to meet the worker's nondeferable expenses. In this light, there is at least as urgent a need for the prompt processing of unemployment benefits appeals as for those under the Public Assistance Programs.

Promptness Report, Plaintiffs' Motion for Summary Judgment, Exhibit A, p. 12. Since the employed worker generally maintains a household budget premised on the receipt of wage income, sudden unemployment would have a severe effect on this budget. Unemployment compensation payments are designed to smooth the transition between periods of employment by mitigating to a degree the erosion of the household budget caused by temporary unemployment. The congressional decision to provide federal funding for state unemployment compensation programs suggests the importance of this type of social insurance.

---

7. We do not have jurisdiction to grant this relief but a state court could.

*See California Human Resources Dept. v. Java,* 402 U.S. [121] at 130, 91 S.Ct. [1347] at 1353 [28 L.Ed.2d 666 (1971)]. *Id.* at 666 (footnote omitted).

In accordance with the foregoing, it is clear that the defendants have established that there is a great possibility of harm to the steelworkers if unemployment payments are enjoined. Additionally, the public has an interest in seeing that unemployment payments are made so that the steelworkers would not have to rely upon the public fisc for support while USX's appeal moves though the state system.[8] We conclude that these two criteria indicate that an injunction should not be granted.

We will issue an appropriate order.

### ORDER

AND NOW, this 1st day of October, 1986, it is ordered as follows:

1. The Pennsylvania Manufacturers Association and the Pennsylvania Chamber of Commerce are granted leave to appear as amici curiae in this action.

2. J. Harris, Floyd Albin, Leo Alfonsi, James Stewart, and the United Steelworkers of America, ALF–CIO–CLC, are granted leave to intervene as defendants.

3. R. Budd Dwyer, Treasurer of the Commonwealth of Pennsylvania, is dismissed as a defendant in this proceeding.

4. Plaintiffs' motion for a preliminary injunction is denied.

---

8. We no not view the state's interest simply in seeing that the unemployment compensation law be permitted to operate as enacted as a sufficient public interest justifying denial of the injunction. *See Continental Group, Inc. v. Amoco Chemicals Corp.,* 614 F.2d 351 (3d Cir.1980).